**ROSLINDALE COOPERATIVE BANK et al., Plaintiffs, Appellants,**

v.

**Carol S. GREENWALD et al., Defendants, Appellees.**

**No. 80–1280.**

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1980.

Decided Jan. 8, 1981.*

* Previously released in unpublished form and judgment entered on November 21, 1980.

Robert H. Tobin, Roslindale, Mass., with whom Tobin & Tobin, Roslindale, Mass., was on brief, for plaintiffs, appellants.

Stephen S. Ostrach, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for State defendants, appellees.

John J. McCarthy, Boston, Mass., with whom Stanley V. Ragalevsky, and Warner & Stackpole, Boston, Mass., were on brief, for The Central Bank defendants.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

On October 28, 1977 Carol Greenwald, Massachusetts Commissioner of Banks, pursuant to Mass.G.L. c. 170 App. § 2–4 certified to the Cooperative Central Bank (Central Bank) that it appeared to her "unsafe and inexpedient" for the Roslindale Cooperative Bank (the Bank) to continue to transact its business. The Bank is a mutual cooperative bank organized under Mass.G.L. c. 170. Central Bank is the reserve bank for all Massachusetts cooperative banks. Mass.G.L. c. 170 App. § 1–1 *et seq.* In accordance with the statutory procedure Central Bank took immediate possession and control of the Bank's assets and business in place of its officers and directors, who were notified of this action on November 2. It is still in such control.

A year later Greenwald commenced administrative proceedings under Mass.G.L. c. 167 § 5 to remove five of the Bank's twelve directors, one of whom forthwith resigned. Plaintiffs having been notified and given a bill of particulars at least a month in advance, a show cause hearing was held beginning on December 8, 1978, attended by Greenwald, the directors and their counsel, and a three-member statutory board.[1] Following a ten day hearing, on January 4, 1979 Greenwald issued a 56 page opinion summarizing the evidence and citing numerous infractions, including operation of the Bank in an unsafe and unsound manner, negligence, and in the case of two directors, direct violations of the banking laws and self-dealing. She therefore removed all four. He decision was upheld a week later by the three member board, who having sat through the hearings, were fully informed.

The Bank purportedly, and its president Albert Tobin,[2] brought an action in the state court promptly after the certification. The Bank's claim was dismissed without prejudice on the ground that neither its

---

1. The board consisted of designees of the state treasurer, the attorney general, and the commission of corporations and taxation, as required by the statute.

2. Tobin was one of the four later removed as officers and directors.

attorney[3] nor its president was authorized, as required by Massachusetts law, to bring the suit on its behalf. Tobin's individual claim was dismissed because he had not exhausted available administrative remedies. The Supreme Judicial Court affirmed in a rescript opinion. *Tobin v. Commissioner of Banks*, —— Mass. ——, 386 N.E.2d 1246. So far as appears, neither the Bank nor Tobin proceeded further in the state court.

On January 11, 1978 the Bank and eleven of its directors filed the present action under 42 U.S.C. § 1983, seeking injunctive relief and damages. After allowing several amendments, chiefly to reflect the developments in the removal proceedings, the court dismissed the complaint for failure to state a claim, except for a count brought by the four removed directors. 481 F.Supp. 749. In due course this latter count was dismissed on summary judgment. Both actions were correct.

Plaintiffs have done much to complicate a basically simple case. The five volume Appendix contains almost two dozen of their motions and slightly more affidavits. Their brief on appeal cites over ninety cases, over thirty Massachusetts statutes, and a substantial number of federal statutes and rules. Their contentions are equally diverse. Some are merely irrelevant.[4] Some are indecipherable.[5] Even most charitably, some we can only describe as silly.[6] Most consist simply of conclusory and unsubstantiated allegations. With so much space and attention given to such matters, even a court with unlimited time and patience would run a serious risk of being distracted from a party's good points, if any there

were. In fact—we hope not for that reason—we find none.

■ The Bank's claim that it was entitled to a hearing prior to certification is effectively disposed of by one of the authorities it cites. *Fahey v. Mallonee*, 1947, 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1554, 91 L.Ed. 2030; see also *Fuentes v. Shevin*, 1972, 407 U.S. 67, 90–91 & n.23, 92 S.Ct. 1983, 1999, n.23, 32 L.Ed.2d 556; *Coffin Bros. v. Bennett*, 1928, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768; *Federal Deposit Ins. Corp. v. American Bank Trust Shares*, 4 Cir., 1980, 629 F.2d 951. The drastic consequences of bank failure or mismanagement and "the impossibility of preserving credit during an investigation," *Fahey*, ante, 332 U.S. at 253, 67 S.Ct. at 1554, call for prompt and decisive action and place this proceeding among the "extraordinary situations" in which notice and hearing may be postponed until after seizure. *Fuentes*, ante, 407 U.S. at 90–91 & n.23, 92 S.Ct. at 1999.

As for a post-event hearing, Mass.G.L. c. 167, § 33 provides for review in the Supreme Judicial Court "[w]henever any bank of whose property and business the commission has taken possession deems itself aggrieved thereby" and files within ten days. In point of fact, while this section originally covered cooperative banks, see *Lowell Cooperative Bank v. Cooperative Central Bank*, 1934, 287 Mass. 338, 344–46, 191 N.E. 921, 924–25, it does no longer. Mass.G.L. c. 170 App. § 2–10. However, the broad provisions of the Massachusetts Declaratory Judgment Act, Mass.G.L. c. 231A, afforded plaintiffs an avenue for relief. See *Tobin v. Commissioner of Banks*, ante, —— Mass. at ——, n.3, 386 N.E.2d at 1248 n.3; *Canney*

---

**3.** Robert Tobin, Albert's brother and another of the directors later removed.

**4.** *E. g.*, the observation that "Jailers have also been found liable under 42 U.S.C. 1983."

**5.** *E. g.*, that "M.G.L. c. 170 Sec. 4 and 5, is unconstitutional due to the conflict of interest of its members who have a paramount self-interest and are not impartial as they are subject to the Commissioner in their paramount interest, their other bank."

**6.** *E. g.*, that defendants "have secretly communicated with each other about plaintiffs' affairs," and, by way of elaboration, that defendants "conspired . . . to gather evidence against the plaintiffs . . . causing a report to be prepared containing evidence to be used against the plaintiffs." We may wonder how defendants, who include the Commissioner and Deputy Commissioner of Banks, the officers of Central Bank, the State Treasurer, and the Attorney General, are expected to conduct their affairs, let alone defend this lawsuit brought against them jointly.

*v. Municipal Court*, 1975, 368 Mass. 648, 335 N.E.2d 651; *Franklin Fair Ass'n v. Secretary of the Commonwealth*, 1964, 347 Mass. 110, 196 N.E.2d 622. The Bank, purportedly, and Albert Tobin did start down this road, and were dismissed on valid, non-pretextual grounds. They have not explained their failure to pursue the matter further.

The availability of the statutory proceeding satisfies the requirements of due process. *Federal Deposit Ins. Corp. v. American Bank Trust Shares*, ante. We cannot be sympathetic to a party who elects to forego the hearing provided him, and then complains he received none. This is not a case of an invasion of plaintiffs' substantive civil rights, where they would have the option of seeking federal rather than state redress. *Monroe v. Pape*, 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492. Rather, their complaint is lack of due process, viz., the absence of a hearing. Since a sufficiently timely hearing was available to them, they cannot bootstrap themselves into the federal court by failing to seek it.

■ Nor can the individual plaintiffs complain of the removal procedure under chapter 167 § 5. That section provides for notice and a reasonable opportunity to be heard prior to removal,[7] with post-termination review by the statutory three-member board and, subsequently, in the Supreme Judicial Court. These provisions are constitutionally generous; plaintiffs' facial attack is frivolous.

■ There remains only plaintiffs' contention that defendant Greenwald so conducted the proceeding as to deny them a fair opportunity to be heard. This claim survived defendants' motion to dismiss. 481 F.Supp. at 755–56. In support of her subsequent motion for summary judgment, Greenwald submitted her affidavit, together with the record of the proceedings. The affidavit summarized the course of events and denied any animus toward plaintiffs. The record amply refutes the directors' allegations that they were given inadequate notice (a month's formal; nearly two months' more informal), and access to evidence and the opportunity to cross-examine witnesses.[8] It also sheds light on their contention that none of the discharged directors was allowed to take the stand except Albert Tobin, who was allowed only one hour. Plaintiffs were repeatedly told they would have four days following the Division's presentation to put on their substantive case. They waited until the fourth day of their witnesses to complain that they themselves had not been heard. The hearing was extended through the following morning; plaintiffs continued with another witness until 11:30 A.M., when Albert Tobin took the stand. His testimony consisted of a 96 page document which he submitted as his statement for the record. None of the others testified. The record abundantly demonstrates that plaintiffs received an adequate opportunity to be heard. How they chose to exercise it was their affair.

■ Finally, we are surprised, in the light of the evidence, that plaintiffs could think they had legitimate complaints against the Commissioner's findings of mismanagement, self-dealing and illegality. The affidavits of Albert Tobin, to the extent that they purport to bear on the issues, are merely conclusory reiterations of the allegations of the complaint, and even at that are often not made on personal knowledge. They are insufficient. F.R.Civ.P. 56(e). Plaintiffs have failed to show the existence of any genuine issue for trial, and summary judgment was rightly entered.[9]

*Affirmed.*

---

7. We have recently indicated that, as in the case of certification, even a post-termination hearing, if prompt, would be sufficient. *Rodriguez de Quinonez v. Perez*, 1 Cir., 1979, 596 F.2d 486, 490–91, *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51.

8. Plaintiffs were allowed extensive cross-examination of the Division's witnesses, but chose to spend much of their time (and to interrupt the direct testimony as well) with lengthy speeches by the Tobins charging persecution at the hands of the Division.

9. We are aware that plaintiffs have sought to raise a number of other points. They require no discussion.