*This opinion is subject to revision before*
*publication in the Pacific Reporter*

**2014 UT 49**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

AMERICA WEST BANK MEMBERS, L.C.,
*Appellant,*

*v.*

STATE OF UTAH and its agents; UTAH DEPARTMENT OF
FINANCIAL INSTITUTIONS; G. EDWARD LEARY,
*Appellees.*

No. 20120456
Filed October 24, 2014

Third District, Salt Lake
The Honorable Tyrone E. Medley
No. 110915676

Attorneys:

Douglas M. Durbano, L. Miles Lebaron, Jacob D. Briggs,
Layton, for appellant

Sean D. Reyes, Att'y Gen., Peggy E. Stone,
Reed M. Stringham, III, Asst. Att'ys Gen.,
Salt Lake City, for appellees

ASSOCIATE CHIEF JUSTICE NEHRING authored an opinion
of the Court with respect to Parts I, II.A, II.C, and III,
in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE LEE, and JUSTICE PARRISH joined, and a
dissenting opinion with respect to Part II.B.

JUSTICE LEE authored an opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
and JUSTICE PARRISH joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court except
as to Part II.B:

ACJ NEHRING, opinion of the Court except as to Part II.B

## INTRODUCTION

¶ 1    America West Bank Members, L.C. (AWBM) challenges the district court's dismissal of its claims against the State of Utah, the Utah Department of Financial Institutions (UDFI), and the director of UDFI, Mr. G. Edward Leary (collectively referred to as the State).[1]    AWBM asserts that the district court erred when it dismissed its claims for lack of sufficient factual allegations under rule 12(b)(6) of the Utah Rules of Civil Procedure.    AWBM contends it pleaded sufficient factual allegations for breach of contract, breach of the covenant of good faith and fair dealing, violations of procedural and substantive due process under the Utah Constitution, and violation of the Takings Clause of the Utah Constitution.    We affirm the decision of the district court dismissing AWBM's claims.

## BACKGROUND

¶ 2    America West Bank (Bank) is wholly owned by its members, AWBM.    On May 1, 2009, UDFI filed a petition in district court for an order approving the seizure of the Bank.    That same day, the district court granted the petition without the presence or participation of AWBM.    UDFI then appointed the Federal Deposit Insurance Corporation (FDIC) as receiver of the Bank.    The FDIC announced publicly it had been appointed receiver of the Bank and immediately began winding down the affairs of the Bank and liquidating its assets.

¶ 3    On June 28, 2011, AWBM filed a complaint in district court against the State of Utah; UDFI; the commissioner of UDFI, Mr. G. Edward Leary; and UDFI's supervisor of banks, Mr. Tom Bay.    AWBM also filed a notice of claim against Mr. Leary, as required by the Utah Governmental Immunity Act (Immunity Act).[2]    AWBM alleged various claims, including common law tort, breach of contract, breach of the covenant of good faith and fair dealing, constitutional takings, and due process violations.    Liquidation of the Bank's assets was ongoing when AWBM filed its complaint.    The State filed a motion to dismiss the complaint

---

[1] AWBM initially included Mr. Tom Bay, the supervisor of banks for UDFI, as a party.  However, Mr. Bay was not properly given notice of the claims as required by the Utah Governmental Immunity Act and was dismissed as a party.

[2] *See* UTAH CODE § 63G–7–401 to -904.

ACJ NEHRING, opinion of the Court except as to Part II.B

based on rules 12(b)(1) and 12(b)(6) of the Utah Rules of Civil Procedure. AWBM opposed the motion to dismiss.

¶ 4    In its opposition to the State's motion to dismiss, AWBM consented to the dismissal of some of its claims. AWBM acknowledged that it failed to file an appropriate notice of claim against Mr. Bay, as required by the Immunity Act, and as a result, all claims against Mr. Bay were dismissed.[3] Additionally, AWBM conceded to the dismissal with prejudice of its claims of failure to disclose evidence at a hearing, negligent destruction of property, and negligence, based primarily on the existence of immunity enjoyed by the defendants.[4]

¶ 5    The district court did not hold a hearing on the motion to dismiss, but "reviewed and considered all Memoranda in support, opposition and reply" and granted the State's motion to dismiss "in full as prayed for based upon all of the reasons . . . and legal authorities set forth in [the State's] [m]emoranda in support and reply, including [AWBM's] concessions." Based on the minute entry and the State's motion to dismiss and accompanying memorandum, the district court dismissed AWBM's breach of contract, breach of the covenant of good faith and fair dealing, and unconstitutional taking claims all due to insufficient factual allegations in the complaint. The district court also dismissed AWBM's claims of denial of procedural and substantive due process with prejudice, because it found that the right to a pre-

---

[3] UDFI moved to dismiss AWBM's claims under both rules 12(b)(1) and 12(b)(6) of the Utah Rules of Civil Procedure. The rule 12(b)(1) dismissal for lack of subject matter jurisdiction relates only to AWBM's "fail[ure] to comply with the notice of claim provisions of the Utah Governmental Immunity Act" as it relates to Mr. Bay. *Gurule v. Salt Lake Cnty.*, 2003 UT 25, ¶ 1, 69 P.3d 1287. AWBM conceded that proper notice was not given to Mr. Bay, and Mr. Bay is not a party to this appeal. Therefore, we address the dismissal of the remaining claims through the lens of rule 12(b)(6) of the Utah Rules of Civil Procedure.

[4] As is noted by AWBM in its brief, the district court did not specify which claims were dismissed with prejudice and which claims were dismissed without prejudice. The court's minute entry simply stated that UDFI's motion was granted in full. We rely on the designations used in UDFI's motion to determine whether claims were dismissed with or without prejudice.

ACJ NEHRING, opinion of the Court except as to Part II.B

seizure hearing was not clearly established and, therefore, could not form the basis of a due process claim.

¶ 6    Following the district court's dismissal of AWBM's claims, AWBM filed a timely notice of appeal.  AWBM appeals the dismissal of its claims for breach of contract, breach of the covenant of good faith and fair dealing, unconstitutional taking, denial of procedural due process, and denial of substantive due process.

**STANDARD OF REVIEW**

¶ 7    AWBM contends the district court erred when it dismissed its causes of action for breach of contract, breach of the covenant of good faith and fair dealing, unconstitutional taking, and violations of procedural and substantive due process under rule 12(b)(6) of the Utah Rules of Civil Procedure.  "A district court's grant of a motion to dismiss based upon the allegations in the plaintiff's complaint[] presents a question of law that we review for correctness."[5]  When "reviewing a dismissal under Rule 12(b)(6) of the Utah Rules of Civil Procedure, we accept the plaintiff's description of facts alleged in the complaint to be true, but we need not accept extrinsic facts not pleaded nor need we accept legal conclusions in contradiction of the pleaded facts."[6]  The district court's ruling "should be affirmed only if it clearly appears that [the plaintiff] can prove no set of facts in support of his claim."[7]  "Furthermore, it is well established that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even if it differs from that stated by the trial court."[8]

**ANALYSIS**

¶ 8    AWBM appeals the district court's dismissal of its claims for breach of contract, breach of the covenant of good faith and fair dealing, unconstitutional taking, and violations of substantive

---

[5] *Osguthorpe v. Wolf Mountain Resorts, L.C.*, 2010 UT 29, ¶ 10, 232 P.3d 999 (alteration in original) (internal quotation marks omitted).

[6] *Id.* (internal quotation marks omitted).

[7] *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990).

[8] *Osguthorpe*, 2010 UT 29, ¶ 10 (internal quotation marks omitted).

ACJ NEHRING, opinion of the Court except as to Part II.B

and procedural due process. The district court granted the State's motion to dismiss all of AWBM's claims. The district court dismissed all of AWBM's claims under rule 12(b)(6) of the Utah Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." The claims for breach of contract and breach of the covenant of good faith and fair dealing were dismissed without prejudice for failure to plead sufficient facts supporting the claims. The claim of an unconstitutional taking, which AWBM argued as a violation of substantive due process, was also dismissed without prejudice for failure to plead sufficient facts. Finally, the claims alleging a violation of substantive and procedural due process were dismissed with prejudice by the district court because it concluded there is no right to a pre-seizure hearing when the State takes a financial institution into receivership.

¶ 9    As a threshold matter, we must determine if we have jurisdiction to hear this appeal.[9] If we lack jurisdiction, we must dismiss the appeal.[10] Only if we first determine that we have appropriate jurisdiction will we address the merits of a case.

## I.  THE DISTRICT COURT'S DISMISSAL IS A FINAL, APPEALABLE ORDER

¶ 10    The State argues that "[t]here may be a question whether the [c]ourt has jurisdiction to hear [AWBM's] claims," and contends that the order below may not be a final order subject to appeal. "[T]he issue of subject matter jurisdiction is a threshold issue, which can be raised at any time and must be addressed before [turning to] the merits of other claims . . . ."[11] We have consistently upheld the "final judgment" rule, which states that "[a]n appeal is improper if it is taken from an order or judgment that is not final."[12] A "final judgment for purposes of appeal is

---

[9] *Thomas v. Lewis*, 2001 UT 49, ¶ 13, 26 P.3d 217.

[10] *Bradbury v. Valencia*, 2000 UT 50, ¶ 8, 5 P.3d 649.

[11] *Houghton v. Dep't of Health*, 2005 UT 63, ¶ 16, 125 P.3d 860 (internal quotation marks omitted); *see also State v. Sun Sur. Ins. Co.*, 2004 UT 74, ¶ 7, 99 P.3d 818 ("Questions of subject matter jurisdiction, because they are threshold issues, may be raised at any time and are addressed before resolving other claims.").

[12] *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649. There are exceptions to the "final judgment" rule; however, none of the

(con't.)

ACJ NEHRING, opinion of the Court except as to Part II.B

one that resolves all claims, counterclaims, cross-claims, and third-party claims before the court and fully and finally resolves the case."[13]

¶ 11  "Utah has adopted the majority rule that an order of dismissal is a final adjudication, and thereafter, a plaintiff may not file an amended complaint,"[14] even if such a dismissal is without prejudice.[15]  This rule is rooted in the United States Supreme Court decision *United States v. Wallace & Tiernan Co.*[16]  There, the Court found that dismissal "without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended [the] suit so far as the District Court was concerned."[17]  Our general rule in determining whether an order is final is "whether the *effect* of the ruling is to finally resolve the issues."[18]  We do not focus on whether a dismissal was with or without prejudice, because the "test to be applied is a pragmatic test."[19]

---

exceptions are relevant to the present case.  Therefore, we focus only on whether this dismissal is final under the final judgment rule.

[13] *Merkey v. Solera Networks, Inc.*, 2009 UT App 130U, para. 4 (per curiam); *see also Bradbury*, 2000 UT 50, ¶ 10 ("To be final, the trial court's order or judgment must dispose of all parties and claims to an action.").

[14] *Nichols v. State*, 554 P.2d 231, 232 (Utah 1976).

[15] *See Steiner v. State*, 495 P.2d 809, 810–11 (Utah 1972) (holding that a dismissal involving two defendants was a final appealable order despite one defendant being dismissed without prejudice while the other was dismissed with prejudice).

[16] 336 U.S. 793 (1949).

[17] *Id.* at 794 n.1; *see also Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004) ("Most courts that have considered the question have followed the Supreme Court's lead, holding that the dismissal of an action—whether with or without prejudice—is final and appealable.").

[18] *Bowles v. State ex rel. Utah Dep't of Transp.*, 652 P.2d 1345, 1346 (Utah 1982).

[19] *First of Denver Mortg. Investors v. C. N. Zundel & Assocs.*, 600 P.2d 521, 528 (Utah 1979) (citing *Brown Shoe Co. v. United States*,

(con't.)

ACJ NEHRING, opinion of the Court except as to Part II.B

¶ 12 In the present case, there are no counterclaims, cross-claims, or third-party claims. The district court determined it did not have an adequately pleaded complaint before it and dismissed the complaint, thereby ending the suit as far as the district court was concerned.[20] The pragmatic effect of the dismissal was to fully terminate the case in the district court. Because we follow the majority rule that an order of dismissal is a final adjudication, and because our test for finality is a pragmatic one, we conclude that we have jurisdiction to hear this appeal.

## II. THE DISTRICT COURT DID NOT ERR WHEN IT DISMISSED AWBM'S CLAIMS

¶ 13 On appeal, AWBM relies heavily on the principle that, on a motion to dismiss, the court must "accept the plaintiff's description of facts alleged in the complaint to be true."[21] Additionally, rule 8(a) of the Utah Rules of Civil Procedure sets a liberal standard for complaints, requiring only that a complaint "contain a short and plain: (1) statement of the claim showing that the party is entitled to relief; and (2) demand for judgment for specified relief."[22] "A dismissal is a severe measure and should be

---

370 U.S. 294 (1962)); *see also* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3913 (2d ed. 2013) ("[T]he finality requirement should not be applied as a sterile formality, but instead should be applied pragmatically . . . ."); *Allied Air Freight, Inc. v. Pan Am. World Airways, Inc.*, 393 F.2d 441, 444 (2d Cir. 1968) ("We do not believe that this distinction should control: dismissals with and without prejudice are equally appealable as final orders.").

[20] *See Wallace & Tiernan Co.*, 336 U.S. at 794 n.1; *Moore v. Pomory*, 620 A.2d 323, 325 (Md. 1993) (holding that a dismissal of a plaintiff's complaint without prejudice "does not mean that the case is still pending in the trial court and that the plaintiff may amend his complaint or file an amended complaint in the same action," but rather "the case is fully terminated in the trial court").

[21] *Osguthorpe v. Wolf Mountain Resorts, L.C.*, 2010 UT 29, ¶ 10, 232 P.3d 999 (internal quotation marks omitted).

[22] This court has not had occasion to address the heightened plausibility standard for pleadings set forth by the United States Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), and we express no opinion here regarding that

(con't.)

ACJ NEHRING, opinion of the Court except as to Part II.B

granted by the trial court only if it is clear that a party is not entitled to relief under any state of facts which could be proved in support of its claim."[23]  Keeping these principles in mind, we address each of AWBM's claims in turn.

### A.  The District Court Did not Err When It Dismissed AWBM's Claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

¶ 14  The district court dismissed AWBM's claims for breach of contract and breach of the covenant of good faith and fair dealing due to a lack of sufficient factual allegations in the complaint.  AWBM argues that its complaint properly stated a claim for breach of contract.  Particularly, AWBM claims it has alleged the existence of a contract between the State and AWBM, that the State breached the contract, and that AWBM is entitled to damages as a result.  AWBM claims that due to its assertion of a right to damages, it can be implied or inferred that AWBM performed its obligations under the contract.  Conversely, the State argues that one cannot prove a breach of contract claim without alleging the actual existence of a contract.  We agree with the State.

¶ 15  Because "[r]ule 12(b)(6) concerns the sufficiency of the pleadings, not the underlying merits of a particular case[,] . . . the issue before the court is whether the petitioner has alleged enough in the complaint to state a cause of action, and this preliminary question is asked and answered before the court conducts any hearings on the case."[24]  The complaint need only "contain a short and plain: (1) statement of the claim showing that the party is entitled to relief; and (2) demand for judgment for specified relief."[25]  In order to properly state a claim for a breach of contract, a party must "allege[] sufficient facts, which we view as true, to satisfy each element."[26]  "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and

approach.

[23] *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990).

[24] *Alvarez v. Galetka*, 933 P.2d 987, 989 (Utah 1997).

[25] UTAH R. CIV. P. 8(a).

[26] *MBNA Am. Bank v. Goodman*, 2006 UT App 276, ¶ 6, 140 P.3d 589.

ACJ NEHRING, opinion of the Court except as to Part II.B

(4) damages."[27] AWBM contends that it has alleged all of the required elements, either specifically or by implication and inference.[28]

¶ 16 Beyond stating the elements required to show a prima facie case for breach of contract, we have not specified what it means to provide a "short and plain statement" of a breach of contract claim "showing that the party is entitled to relief."[29] We, as well as the court of appeals, have hinted at the requirements.[30] We take this opportunity to clarify what is required for a "short and plain" statement for relief for a breach of contract claim under the Utah Rules of Civil Procedure.[31]

---

[27] *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388.

[28] AWBM's complaint regarding breach of contract states:

> 22. Defendants have breached a contract between the parties.
> 23. Plaintiffs have been damaged as a result of Defendants' breach.
> 24. Plaintiffs are entitled to recover damages in an amount to be proven at trial, which are currently unknown and ongoing, plus attorneys fees and interest.

[29] UTAH R. CIV. P. 8(a)(1).

[30] *See Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, 314 P.3d 1079. In *Shah*, the court of appeals found that a patient's complaint against her physician and hospital "specifically identified contractual relationships" despite the absence of a written contract. *Id.* ¶ 17. The court of appeals ultimately rejected the plaintiff's claims on other grounds. *Id.* ¶ 18. Additionally, in *Canfield v. Layton City*, we concluded that a "violation of . . . written employment rules" sufficiently "outline[d] a breach of contract claim" and was sufficient to withstand dismissal for failure to state a claim upon which relief can be granted. 2005 UT 60, ¶¶ 7, 15, 22–23, 122 P.3d 622.

[31] *See Peak Alarm Co. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 70 n.13, 243 P.3d 1221 (noting we have not addressed *Twombly*'s heightened plausibility standard for pleadings under the Federal Rules of Civil Procedure).

ACJ NEHRING, opinion of the Court except as to Part II.B

¶ 17 The Utah Rules of Civil Procedure contain an appendix of forms, and we turn to those forms for guidance in outlining the pleading requirement of a "short and plain statement" for breach of contract. Form four, entitled "Complaint--Promissory Note," and form five, entitled "Complaint--Multiple Claims," are particularly helpful. These forms illustrate the standard of pleading in a complaint for a breach of a promissory note, which is a contract, and a multi-count complaint that specifically includes a breach of contract. As exemplars, these forms indicate that, at a minimum, a breach of contract claim must include allegations of when the contract was entered into by the parties, the essential terms of the contract at issue, and the nature of the defendant's breach.[32] These essential elements are required to fulfill the requirements of a "short and plain" statement under our pleading standard. These minimal allegations will "give the defendant fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved."[33]

¶ 18 AWBM has not met this standard. AWBM's complaint implies the existence of a contract and a breach of that contract. However, AWBM made no allegations regarding the date when the contract was entered into, the essential terms of the contract, nor the nature of the defendant's breach. Without the allegations outlined above, there can be no claim for a breach of contract. We therefore affirm the district court's dismissal without prejudice of AWBM's breach of contract claim.

¶ 19 A claim for breach of the covenant of good faith and fair dealing is a derivative of the breach of contract claim. Because AWBM did not allege the existence of facts required to plead a breach of contract, it has also failed to plead a breach of the covenant of good faith and fair dealing. Accordingly, we affirm the district court's dismissal without prejudice of AWBM's claim for breach of the covenant of good faith and fair dealing.

*B. The District Court Did not Err When It Dismissed*
*AWBM's Due Process Claims with Prejudice*

¶ 20 Today, the court concludes that AWBM's due process claims should be dismissed without prejudice. I disagree, and I

---

[32] *See* UTAH R. CIV. P., Forms 4 & 5.

[33] *Canfield*, 2005 UT 60, ¶ 14 (internal quotation marks omitted).

ACJ NEHRING, opinion of the Court except as to Part II.B

would hold that the district court properly dismissed the due process claims with prejudice. As the court notes,[34] the district court dismissed AWBM's claims alleging violations of substantive and procedural due process with prejudice. The district court found that AWBM failed to demonstrate a "clearly established" right to a pre-seizure hearing, which is a requirement to receive damages for a due process violation under the Utah Constitution.[35] AWBM argues the district court erred when it dismissed its procedural and substantive due process claims. AWBM does not clearly state what constituted a violation of its procedural and substantive due process rights; however, on the face of its complaint and on appeal, AWBM argues that errors or inadequacies in the procedure surrounding the seizure of the Bank violated its right to due process.[36] This is clearly a procedural due process claim.[37] AWBM has not asserted it was

---

[34] *Infra* ¶ 37.

[35] *See Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, ¶ 23, 16 P.3d 533.

[36] AWBM argues that UDFI did not show a sufficient emergency or special need for seizure of the Bank, and thus failed to follow the applicable statutes. However, AWBM has not challenged the findings of the commissioner, UDFI, or the district court regarding the seizure of the Bank. The record contains no evidence of the commissioner's findings or the seizure proceedings. AWBM has simply alleged that the proceedings violated their "constitutional, common law, and statutory rights." Without more, we must presume the regularity of those proceedings. *State v. Chettero*, 2013 UT 9, ¶ 32, 297 P.3d 582 ("[W]hen crucial matters are not included in the record, the missing portions are presumed to support the action of the trial court." (internal quotation marks omitted)); *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278 (same). Thus, I decline to address this specific argument.

[37] AWBM's complaint alleged violations of substantive due process. However, AWBM's allegations of substantive due process referred to the seizure of the bank without just compensation, a point AWBM concedes on appeal. Because AWBM's substantive due process claims are just another iteration of a takings claim, we examine them under the Takings Clause, *infra*, Part II.C.

ACJ NEHRING, opinion of the Court except as to Part II.B

deprived of any fundamental right. Therefore, I decline to address AWBM's allegation of substantive due process violations as an independent claim.

¶ 21 I agree with the court that the *Spackman* test must be satisfied in order for AWBM to be entitled to damages. I also agree with the court that the elements of *Spackman* are not set forth in the complaint and thus, the district court properly dismissed AWBM's due process claim under Utah Rule of Civil Procedure 12(b)(6).[38] However, in my view, AWBM's due process claims were properly dismissed with prejudice.

¶ 22 Under the first element of *Spackman*, AWBM must show that it "suffered a flagrant violation of [its] constitutional rights."[39] A right is "not clearly established unless its contours are sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right."[40] This "ensures that a government employee is allowed the ordinary human frailties of forgetfulness, distractibility, or misjudgment without rendering [him or her]self liable for a constitutional violation."[41] We have also recognized that "it will be easier for a plaintiff to demonstrate a flagrant violation where precedent clearly establishes that the defendant's alleged conduct violates a provision of the constitution."[42] Conversely, "in the absence of relevant precedent recognizing the right and prohibiting the alleged conduct, it will be more difficult for a plaintiff to prevail."[43] Additionally, there are circumstances where conduct "will be so egregious and unreasonable that it constitutes a flagrant violation of a constitutional right even in the absence of controlling precedent."[44]

¶ 23 We have never addressed the question of whether a pre-seizure hearing is required when a financial institution is seized.

---

[38] *Infra* ¶ 40.

[39] *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 58, 250 P.3d 465 (internal quotation marks omitted).

[40] *Id.* ¶ 66 (internal quotation marks omitted).

[41] *Id.* (alteration in original) (internal quotation marks omitted).

[42] *Id.* ¶ 67.

[43] *Id.*

[44] *Id.*

ACJ NEHRING, opinion of the Court except as to Part II.B

However, this question has been squarely addressed by the United States Supreme Court under the Federal Due Process Clause. While procedural due process generally requires notice and a hearing, "[t]here are extraordinary situations that justify postponing notice and opportunity for a hearing."[45] Those situations "must be truly unusual," and a "seizure without opportunity for a prior hearing" is allowed "[o]nly in a few limited situations."[46] The Court has held that the limited situations justifying a seizure without a prior hearing must, at a minimum, meet three requirements:

> First, in each case, the seizure [must be] directly necessary to secure an important governmental or general public interest. Second, there [must be] a special need for very prompt action. Third, the State [must keep] strict control over its monopoly of legitimate force; the person initiating the seizure [must be] a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.[47]

The Court has held that seizure of property *without a prior hearing* is justified "to collect the internal revenue of the United States, to meet the needs of a national war effort, *to protect against the economic disaster of a bank failure*, and to protect the public from misbranded drugs and contaminated food."[48] The court acknowledges that the United States Supreme Court concluded that a seizure without a prior hearing meets this standard.[49]

¶ 24 In *Fahey v. Mallonee*, the Supreme Court was presented, as we are here, with the issue of whether a "hearing after the conservator takes possession [of a bank] instead of before" was constitutional.[50] The Court acknowledged that dispensing with a

---

[45] *Fuentes v. Shevin*, 407 U.S. 67, 90 (1972) (internal quotation marks omitted).

[46] *Id.* at 90–91.

[47] *Id.* at 91.

[48] *Id.* at 91–92 (emphasis added) (footnotes omitted).

[49] *Infra* ¶ 42 n.2.

[50] 332 U.S. 245, 253 (1947).

ACJ NEHRING, opinion of the Court except as to Part II.B

pre-seizure hearing when a financial institution is seized is indeed a "drastic procedure," but that "the delicate nature of the institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner."[51] The Court held that "in the light of the history and customs of banking," the seizure of a financial institution without a prior hearing is not "unconstitutional."[52] Thus, procedural due process does not require a pre-seizure hearing when a state seizes a bank, provided a post-seizure hearing is available.[53] The Utah Financial Institutions Act provides a post-seizure hearing, and AWBM had the opportunity for a post-seizure hearing.[54]

¶ 25 The Utah Court of Appeals has also addressed this issue. In *Brown v. Weis*, the court of appeals addressed an argument similar to the one presented by AWBM.[55] The court of appeals reiterated the three factors set forth in *Fuentes* and noted that "[o]ne of the very situations cited by the *Fuentes* court as ordinarily satisfying the above criteria is the necessity of protecting against the economic disaster of a bank failure."[56] The court of appeals, relying primarily on *Fuentes*, concluded that the summary seizure of a failing financial institution is in the public interest and that due process did not require a pre-seizure hearing.[57]

---

[51] *Id.*

[52] *Id.* at 254.

[53] *Fahey*, 332 U.S. at 253–54.

[54] UTAH CODE § 7–2–3.

[55] 871 P.2d 552, 558 (Utah Ct. App. 1994).

[56] *Id.* at 566 (citing *Fuentes*, 407 U.S. at 91–92).

[57] *Id.* at 566–67; *see also Roslindale Coop. Bank v. Greenwald*, 638 F.2d 258, 260 (1st Cir. 1981) ("The drastic consequences of bank failure or mismanagement and 'the impossibility of preserving credit during an investigation' call for prompt and decisive action and place this proceeding among the 'extraordinary situations' in which notice and hearing may be postponed until after seizure." (quoting *Fahey*, 332 U.S. at 253; *Fuentes*, 407 U.S. at 90–91 & n.23)); *Gregory v. Mitchell*, 459 F. Supp. 1162, 1165–66 (M.D. Ala. 1978) ("Summary seizure of a bank[—]i.e., seizure without a prior

(con't.)

ACJ NEHRING, opinion of the Court except as to Part II.B

¶ 26 The court is correct that *Fuentes* outlines a context-dependent and fact-specific test.[58] However, we need not "assess the question based on the facts and circumstances" of every individual case, as the court suggests.[59] The court notes that "*Fuentes* articulates the general standards under which property may be seized *without a hearing*" and *Fahey* concluded that a "seizure *without a hearing* had met that standard."[60] However, the court fails to distinguish between a pre-seizure and post-seizure hearing, opting instead to lump the two together.[61] *Fuentes* does not stand for the proposition that each and every due process challenge is subject to the fact-intensive three-part test announced in the opinion. Rather, the *Fuentes* Court was determining whether prejudgment replevin statutes should be included in the "few limited situations" where "outright seizure [would be allowed] without opportunity for a prior hearing."[62] The United States Supreme Court held that the replevin statutes at issue did require an opportunity to be heard before property was taken.[63] But what has been made clear by the Court is that "in light of the history and customs of banking" and the need to protect both customers and the public from a bank failure, the seizure of a

___

hearing[—]has been approved by many courts, including the Supreme Court of the United States, on the ground [that] such action is justified by the potential economic disaster of a bank failure."); *Hoffman v. State*, 834 P.2d 1218, 1219 n.2 (Alaska 1992) ("[T]he federal due process clause does not require a pre-seizure hearing when a state seizes a bank." (citing *Fahey*, 332 U.S. at 253–54)).

[58] *Infra* ¶ 42.

[59] *Infra* ¶ 42.

[60] *Infra* ¶ 42 n.2 (emphases added).

[61] Clearly, the lack of an opportunity to be heard, either pre- or post-seizure, would have immense due process implications.

[62] *Fuentes*, 407 U.S. at 90–91 (footnote omitted). The court acknowledges this proposition also. *Infra* ¶ 42 n.2.

[63] *Fuentes*, 407 U.S. at 96. The Court also noted that its holding was "a narrow one," in that the State retained the power "to seize goods before a final judgment in order to protect the security interests of creditors," provided those creditors "tested their claim to the goods through the process of a fair prior hearing." *Id.*

ACJ NEHRING, opinion of the Court except as to Part II.B

financial institution without a prior hearing does not violate the Due Process Clause if a post-seizure hearing is available.[64]  In the present case, a post-seizure hearing was available, thus there is no violation of due process.

¶ 27   It is not correct that this holding would create a "per se rule insulating all bank seizures from constitutional challenge under the Due Process Clause."[65]  Instead, I simply acknowledge and agree with what the United States Supreme Court has held: in the context of a bank seizure, due process does not require a pre-seizure hearing if a post-seizure hearing is available; a post-seizure hearing is enough.[66]  The seizure of a failed bank before a hearing meets the test in *Fuentes*.  "The drastic consequences of bank failure or mismanagement and the impossibility of preserving credit during an investigation call for prompt and decisive action and place [a bank seizure] among the extraordinary situations in which notice and hearing may be postponed until after seizure."[67]   A post-seizure hearing is available under the Utah Financial Institutions Act and may be initiated within ten days after a bank is seized.[68]  Additionally, the commissioner of the UDFI is the only government official capable of initiating a bank seizure.[69]  AWBM is not entitled to and has no constitutional right to a pre-seizure hearing.[70]  AWBM challenged

---

[64] *Id.* at 91; *Fahey*, 332 U.S. at 254–56.

[65] *Infra* ¶ 42.

[66] *See Fuentes*, 407 U.S. at 90–91; *Fahey*, 332 U.S. at 253–54; *accord First Fed. Savs. Bank & Trust v. Ryan*, 927 F.2d 1345, 1358 (6th Cir. 1991); *Roslindale Coop. Bank*, 638 F.2d at 260; *FDIC v. Am. Bank Trust Shares, Inc.*, 629 F.2d 951, 954–55 (4th Cir. 1980); *Turner v. Officers, Dirs. & Emps. of Mid Valley Bank*, 712 F. Supp. 1489, 1500–02 (E.D. Wash. 1988); *Salinas Valley Cmty. Fed. Credit Union v. Nat'l Credit Union Admin.*, 564 F. Supp. 701, 706 (N.D. Cal. 1983); *FDIC v. Bank of San Marino (In re Bank of San Marino)*, 213 Cal. Rptr. 602, 607 (Ct. App. 1985).

[67] *Roslindale Coop. Bank*, 638 F.2d at 260 (citation omitted) (internal quotation marks omitted).

[68] UTAH CODE § 7–2–3(1)(a).

[69] *Id.* § 7–2–1.

[70] *Fahey*, 332 U.S. at 253–54.

ACJ NEHRING, opinion of the Court except as to Part II.B

the bank seizure under the Due Process Clause because the State seized its bank without first providing AWBM with a hearing. Thus, under no circumstance can AWBM prove facts that show that it was entitled to a pre-seizure hearing. Thus, AWBM cannot meet the first element of *Spackman* showing that there was a flagrant violation of its constitutional right, as there is no right to a pre-seizure hearing.[71]

¶ 28 AWBM cannot prove the first element of *Spackman*. There can be no flagrant violation of a non-existent right. Clear precedent from the United State Supreme Court indicates that there is no right to a pre-seizure hearing when a financial institution is seized by the state, and due process is satisfied if a post-seizure hearing is available.[72] Therefore, AWBM has no clearly established right to a pre-seizure hearing. Its due process

---

[71] It should also be said that it is not enough to merely allege a constitutional violation under the first element of *Spackman*. In order to meet the first *Spackman* element, the violation must be "flagrant." 2000 UT 87, ¶ 23. To establish a "flagrant violation," a defendant must have violated a right whose "contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks omitted). First, AWBM had no right to a pre-seizure hearing and thus the State's agents had no understanding that the seizure of the bank violated any right. Second, AWBM has made allegations of a flagrant violation, but it conceded to the dismissal of those claims with prejudice in the district court. The majority concludes otherwise. *Infra* ¶ 41. In its complaint, AWBM alleged that State agents either intentionally or negligently failed to disclose material information in a verified petition to the district court when seeking the bank seizure. On appeal, AWBM argues that this failure to disclose material information was a flagrant violation. But even if this were the case, AWBM has already conceded the dismissal of these allegations with prejudice. AWBM cannot now resurrect a forfeited argument and should not be given an opportunity to relitigate claims it has already conceded. Thus, under the circumstances, AWBM cannot prove any set of facts in support of a "flagrant" violation. This further supports the district court's dismissal of AWBM's due process claim with prejudice.

[72] *Fuentes*, 407 U.S. at 91–92; *Fahey*, 332 U.S. at 254–56.

ACJ NEHRING, opinion of the Court except as to Part II.B

rights are preserved by its opportunity for a post-seizure hearing, at which time AWBM could have brought constitutional challenges to the seizure of the bank. Thus, I would affirm the district court's dismissal of AWBM's due process claims with prejudice.

### C. The District Court Did not Err When It Dismissed AWBM's Claim for an Unconstitutional Taking Without Prejudice Due to Insufficient Factual Allegations

¶ 29 The district court dismissed AWBM's Takings Clause claim for failure to allege sufficient facts to justify the cause of action. AWBM argues that it has pleaded sufficient facts to demonstrate that it had a protectable property interest, and that its property was taken by government action. AWBM argues that, therefore, it is entitled to "just compensation."

¶ 30 Article I, section 22 of the Utah Constitution reads, "Private property shall not be taken or damaged for public use without just compensation."[73] This section, Utah's Takings Clause, is "distinct from, and provid[es] greater protection than, those constitutional provisions that provide compensation only for the 'taking' of private property."[74] This broad guarantee of just compensation "is triggered when there is any substantial interference with private property which destroys or materially lessens its value, or by which the owner's rights to its use and enjoyment is in any substantial degree abridged or destroyed."[75]

¶ 31 Although the Utah Takings Clause provides greater protection than its federal counterpart, we have adopted the federal distinction between a physical and regulatory taking.[76] This distinction is important, as the two takings have "markedly

---

[73] The Takings Clause of the Utah Constitution expressly provides a damage remedy for a violation—"just compensation." Because of this textual constitutional right to damages, we do not address AWBM's takings claim under *Spackman*. 2000 UT 87, ¶ 20.

[74] *Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶ 21, 275 P.3d 208.

[75] *Id.* ¶ 22 (internal quotation marks omitted).

[76] *B.A.M. Dev., L.L.C. v. Salt Lake Cnty.*, 2006 UT 2, ¶ 32, 128 P.3d 1161.

ACJ NEHRING, opinion of the Court except as to Part II.B

different analytical formulas."[77] Generally, there are two principal steps in the takings analysis.[78] First, a claimant must demonstrate some protectable interest in property.[79] Second, the claimant must show that the property interest was taken or damaged by government action.[80] The district court dismissed AWBM's takings claim for a failure to allege sufficient facts to support the claim, particularly that AWBM did not demonstrate that the taking was for a public use. AWBM argues it has alleged these elements. We disagree and affirm the district court's dismissal without prejudice.

¶ 32    A compensable taking may occur in either of two ways.[81] A property owner "may suffer a physical invasion or permanent occupation of his or her property," or may be deprived of property when a regulatory scheme "go[es] too far and impinge[s] on private freedom."[82] "Physical takings without just compensation are unconstitutional 'without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner.'"[83] Regulatory takings, unlike physical takings, "do not always trigger an obligation to compensate the property owner."[84] When a regulatory scheme does not involve a physical invasion or permanent occupation, "[t]he Supreme Court has assigned no set formula to determine whether a regulatory taking is unconstitutional"; instead, the

---

[77] *Id.; see also id.* ¶¶ 32–33 (noting the difference between a physical and regulatory taking).

[78] *Admiral Beverage Corp.*, 2011 UT 62, ¶ 22.

[79] *Id.; Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 23, 251 P.3d 804; *Intermountain Sports, Inc. v. Dep't of Transp.*, 2004 UT App 405, ¶ 8, 103 P.3d 716.

[80] *See Admiral Beverage Corp.*, 2011 UT 62, ¶ 22; *Harold Selman, Inc.*, 2011 UT 18, ¶ 23; *Intermountain Sports, Inc.*, 2004 UT App 405, ¶ 8.

[81] *Golden Pac. Bancorp v. United States*, 15 F.3d 1066, 1071–72 (Fed. Cir. 1994).

[82] *Id.* (internal quotation marks omitted).

[83] *B.A.M. Dev., L.L.C.*, 2006 UT 2, ¶ 32 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434–35 (1982)).

[84] *Id.* ¶ 33.

ACJ NEHRING, opinion of the Court except as to Part II.B

Court has engaged in an "essentially ad hoc, factual inquir[y]."[85] In conducting this inquiry, the Court looks to several factors, such as the "economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action."[86]

¶ 33 According to AWBM's complaint, "it appears that the Plaintiff and its Members have lost all of the ownership, goodwill, equity, capital, and investments that they made in the Bank." This is the extent of AWBM's allegations contained in its complaint, and neither we nor the district court can discern whether this alleged taking constituted a physical or regulatory taking. This distinction has a marked impact on UDFI's response and defense, the district court's analysis, and the outcome. Without more, we cannot agree that AWBM has sufficiently pleaded a taking, and we thus affirm the district court's dismissal of the claim, but do so without prejudice.[87]

## III. THE DISTRICT COURT DID NOT HOLD AWBM TO A HEIGHTENED PLEADING STANDARD

¶ 34 AWBM argues that the district court erred when it dismissed AWBM's causes of action because it applied a higher pleading standard than that dictated by rule 8 of the Utah Rules of Civil Procedure. AWBM argues the district court erred when it relied on the State's motion to dismiss and accompanying memorandum that cited to *Ellefsen v. Roberts*[88] and *Heathman v. Hatch*.[89] It argues that the district court's reliance on these cases resulted in the application of a heightened pleading standard. We disagree. *Heathman* involved a claim of fraud, which requires heightened pleading under rule 9 of the Utah Rules of Civil

---

[85] *Id.* (internal quotation marks omitted).

[86] *Id.* (internal quotation marks omitted).

[87] Although we announce today that a claim for a compensable taking under Article I, section 22 of the Utah Constitution must allege the type of taking (physical or regulatory), we express no opinion on the heightened pleading standard required by federal courts under *Twombly*.

[88] 526 P.2d 912 (Utah 1974).

[89] 372 P.2d 990 (Utah 1962).

ACJ NEHRING, opinion of the Court except as to Part II.B

Procedure.[90] But the State did not argue that heightened pleading was required here. The State cited *Heathman* for the proposition that the objective of the pleading rules under the Utah Rules of Civil Procedure "is to require that the essential facts upon which redress is sought be set forth with simplicity, brevity, clarity and certainty so that it can be determined whether there exists a legal basis for the relief claimed[.]"[91]

¶ 35 Similarly, the State cited *Ellefsen* for the proposition that "[t]he sufficiency of plaintiff's pleadings, which are construed together, must be determined by the facts pleaded rather than the conclusions stated."[92] There is no indication on the record, nor can we discern any evidence from the record, that the district court applied a heightened pleading standard.

## CONCLUSION

¶ 36 We affirm the district court's dismissal of all of AWBM's claims. AWBM's claims for breach of contract and breach of the covenant of good faith and fair dealing are dismissed without prejudice. AWBM's due process claims are dismissed without prejudice. Finally, AWBM has not adequately pleaded its takings claim, and the claim is dismissed without prejudice.

---

[90] *Id.* at 991. *Heathman* also addressed claims of negligence. *Id.*

[91] *Id.* at 992.

[92] *Ellefsen*, 526 P.2d at 915.

JUSTICE LEE, opinion of the Court:

¶ 37 We affirm the district court's dismissal of plaintiff's procedural due process claim, but find error in the dismissal of the claim with prejudice. The defect in that claim is a failure to plead the claim at an adequate level of detail. And for that reason the dismissal should have been without prejudice.

¶ 38 In order to state a claim for monetary damages for an alleged violation of the constitution, a plaintiff must allege three elements: (1) the plaintiff "suffered a flagrant violation of his or her constitutional rights," (2) "existing remedies do not redress [the plaintiff's] injuries," and (3) "equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶¶ 23–25, 16 P.3d 533 (internal quotation marks omitted).

¶ 39 The complaint under review falls far short of alleging those elements. It makes the limited allegation that due process required a pre-seizure hearing, by baldly asserting that the applicable legal standard was not met. Thus, according to the complaint, the seizure was not "directly necessary to secure an important governmental or general public interest," there was no "special need for very prompt action," and the responsible governmental official had not concluded that the seizure was, "pursuant to a narrowly-drawn statute, necessary and justified in this particular instance." *See Fuentes v. Shevin*, 407 U.S. 67, 91 (1972) (articulating the test for determining when a pre-seizure hearing is required under the Due Process Clause).

¶ 40 This is merely an allegation that a constitutional violation occurred, satisfying only half of the first element of the *Spackman* test. To survive a rule 12(b)(6) motion, the plaintiff also must allege that the violation was "flagrant," that alternative remedies would not redress the plaintiff's damages, and that equitable relief was "wholly inadequate." *Spackman*, 2000 UT 87, ¶¶ 23, 25. These essential elements are set forth nowhere in the complaint. Thus, this claim was properly dismissed for failure to state a claim.

¶ 41 The district court granted the defendants' motion to dismiss "in full." And the motion sought dismissal "with prejudice," so the district court's judgment was apparently a dismissal with prejudice. Such a dismissal is a "drastic remedy," *Bonneville Tower Condo. Mgmt. Comm. v. Thompson Michie Assocs.*, 728 P.2d 1017, 1020 (Utah 1986), which is generally appropriate

JUSTICE LEE, opinion of the Court

"only if it appears to a certainty that [a] plaintiff cannot state a claim." *Alvarez v. Galetka*, 933 P.2d 987, 991 (Utah 1997) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990)).[1]

¶ 42 Justice Nehring contends that a pre-seizure hearing is never required under the Due Process Clause. And he accordingly concludes that plaintiffs are categorically incapable of stating a claim as a matter of law. *See supra* ¶ 26. We see the matter differently. Granted, in *Fahey v. Mallonee*, 332 U.S. 245 (1947), the Supreme Court held that seizure of a financial institution under the Home Owners' Loan Act of 1933 was appropriate. *See id.* at 253–54. But the operative test—subsequently articulated in *Fuentes*[2]—is a fact-intensive one. Thus, although no hearing was required in *Fahey*, there is no per se rule in controlling precedent. The governing test (in *Fuentes*) is more context-dependent and fact-specific. And that test is incompatible with the notion of a per se rule insulating all bank seizures from constitutional challenge under the Due Process Clause. Instead, *Fuentes* calls on courts to assess the question based on the facts and circumstances of an individual case, considering whether the specific seizure at issue is "*directly* necessary to secure an important governmental interest"; whether there is a "special need for very prompt action"; and whether the responsible state actor determined "under the standards of a *narrowly drawn statute*, that it was necessary and justified in the *particular* instance." 407 U.S. at 91

---

[1] At some point, the failure to plead a claim at a sufficient level of detail could sustain a dismissal with prejudice, but that remedy is usually reserved for cases where the plaintiff has had multiple opportunities to amend and has continually failed to state a claim. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should generally be freely given, unless the plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed"). That exception has no application here, as this was plaintiff's first attempt to assert this claim.

[2] *Fuentes* concerned a prejudgment writ of replevin statute, not a bank seizure. 407 U.S. at 69. But *Fuentes* articulates the general standards under which property may be seized without a hearing. *Id.* at 91. The Court then went on to list several examples where it had concluded that seizure without a hearing had met that standard, including in *Fahey*. *Id.* at 91–92 & nn. 24–28.

(emphasis added). Thus, *Fahey* may be read to deem it unlikely that a pre-seizure hearing is required by due process; but it does not state a per se rule, or necessitate such a result in all cases.

¶ 43 Under the fact-intensive *Fuentes* analysis, we cannot conclude "to a certainty" that it is impossible for the plaintiff to allege facts sustaining the conclusion that a pre-seizure hearing was required by due process in this case. Here the complaint did little more than allege that a seizure occurred and summarily recite the *Fuentes* test. And in light of the limited factual basis set forth in the complaint, it is impossible to conclude that there are no facts under which the plaintiff could allege a colorable due process claim.

¶ 44 We affirm the dismissal of the plaintiff's procedural due process claim, but find error in the dismissal of the claim with prejudice and accordingly direct the district court to enter a judgment of dismissal without prejudice.

———————