**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROGER HILL,

     Plaintiff - Appellant,

v.

MARK EVERETT WARSEWA; LINDA
JOSEPH; THE STATE OF COLORADO,

     Defendants - Appellees,

------------------------------

LAW PROFESSORS; COLORADO
WATER CONGRESS; UPPER
ARKANSAS WATER CONSERVANCY
DISTRICT; TAYLOR PLACER, LTD;
CRYSTAL CREEK HOMEOWNERS
ASSOCATION, INC.; JACKSON-
SHAW/TAYLOR RIVER RANCH, LLC.;
WILDER ASSOCIATION,

     Amici Curiae.

No. 19-1025

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-01710-KMT)**
_____

Alexander N. Hood (and Mark Squillace, with him on the brief), Denver, Colorado, for
Plaintiff - Appellant.

Scott Steinbrecher, Senior Assistant Attorney General (Philip J. Weiser, Attorney
General and Daniel E. Steuer, Senior Assistant Attorney General, with him on the brief),
Denver, Colorado, for Defendant - Appellee State of Colorado.

Kirk B. Holleyman, Kirk Holleyman, P.C., Denver, Colorado, for Defendants - Appellees Warsewa and Joseph.

Jennifer L. Danis and Edward Lloyd, Morningside Heights Legal Services, Inc., Environmental Law Clinic, Columbia Law School, New York, New York; and Kevin Lynch, Wyatt G. Sassman, and Sarah A. Matsumoto, Environmental Law Clinic, University of Denver Sturm College of Law, Denver, Colorado, for Amici Curiae of Law Professors, in support of Plaintiff - Appellant.

Stephen H. Leonhardt and April D. Hendricks, Burns, Figa & Will, P.C., Greenwood Village, Colorado; Kendall K. Burgemeister of Law of the Rockies, Gunnison, Colorado, for Amici Curiae Colorado Water Congress and Upper Arkansas Water Conservancy District, in support of Defendant - Appellees.

Richard A. Westfall, Hale Westfall, LLP, Denver, Colorado, and Charles B. White, Petros & White, LLC, Denver, Colorado, for Amici Curiae Taylor Placer, LTD, Crystal Creek Homeowners Association, INC., Jackson - Shaw / Taylor River Ranch, LLC, and Wilder Association, in support of Defendants - Appellees.

_____

Before **HOLMES**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Plaintiff-Appellant Roger Hill appeals from the district court's dismissal of his complaint pursuant to Fed. R. Civ. P. 12(b)(6) for lack of prudential standing. Mr. Hill is a fly fisherman who prefers to fish at a favorite spot in the Arkansas River. Defendants-Appellees Mark Everett Warsewa and Linda Joseph (Landowners) contend that they own the Arkansas riverbed up to its centerline at the spot at which Mr. Hill prefers to fish. Mr. Hill contends that this segment of the river was navigable for title at the time Colorado was admitted to the United States and that title to the riverbed consequently vested in the state at admission under Article IV of the Constitution and the Equal Footing Doctrine. According to Mr. Hill, the state holds this title in trust for the public,

2

subject to an easement for public uses such as fishing. Defendant-Appellee State of Colorado (Colorado or the State) agrees with the Landowner Appellees that this segment of the river was non-navigable for title at statehood and is privately owned. The district court[1] found that Mr. Hill lacked prudential standing because he asserted a generalized grievance and rested his claims on the rights of the state. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse.

## Background

Mr. Hill believes that he, as a member of the public, has a right to fish at the disputed segment of the Arkansas River. The dispute over title has led to conflict between Mr. Hill and the Landowners. Mr. Hill alleges that the Landowners have sought to exclude him from the property by chasing him off by force and threats of force, throwing rocks at him, threatening legal action, and shooting a gun at one of his friends. Aplt. Br. at 9.

The Landowners contend that they own the riverbed and are within their rights to exclude Mr. Hill. They claim that the chain of record title for the land[2] originates with a federal patent and that only private owners are within that chain. The Landowners purchased the Warsewa Parcel by warranty deed in 2006. The subdivision plat for the Warsewa Parcel, which is designated Lot 5 of Block 2 in that document, indicates that its boundaries extend up to the center line of the river. Aplt. App. 41–42.

---

[1] Magistrate Judge Kathleen M. Tafoya, sitting by consent of all parties. See Consent to Jurisdiction of Magistrate Judge, Hill v. Warsewa et al., No. 18-cv-01710-KMT (Aug. 3, 2018) (ECF No. 25).
[2] We follow the parties by referring to this land as the "Warsewa Parcel."

Below, Mr. Hill alleged facts in support of his navigability claim. Colorado was admitted as a state on August 1, 1876. Mr. Hill alleged that fur trappers used the Arkansas River to transport goods prior to that date. Id. at 31. He also asserted that contemporaneous newspaper reports describe commercial use of the river to float logs and railroad ties downstream. Id. at 32.

Mr. Hill first filed an action in the district court. See Hill v. Warsewa, 18-cv-00277-PAB-KLM (D. Colo.). The Landowners defaulted in that action, while Colorado moved to intervene and asked the district court to dismiss on Eleventh Amendment grounds. See Motion to Intervene, id. (May 7, 2018) (ECF No. 17). Before that motion was resolved, Mr. Hill moved for, and was granted, voluntary dismissal of the action. See Notice of Voluntary Dismissal, id. (May 29, 2018) (ECF No. 23).

Mr. Hill then filed substantially the same action in Colorado state court. Aplt. App. 6. Colorado was named as an "interested party" and later appeared in the action. The landowners appeared and removed the action to the district court on the basis of federal question jurisdiction. See id. at 18. Mr. Hill added Colorado as a named Defendant in the federal action. See id. at 26.

Both the Landowner Appellees and Colorado moved the district court to dismiss, alleging defects in constitutional and prudential standing and failure to state a claim. See id. at 45, 62. Mr. Hill responded with various motions of his own, moving to remand for lack of subject matter jurisdiction, asking the court to stay consideration of opposing motions until resolution of his motion to remand, and moving to certify the question of the nature of Colorado's title to the Colorado Supreme Court. See id. 77, 83.

4

The district court declined to stay consideration and resolved the remaining motions. See id. at 177. First, the court held that Mr. Hill lacked prudential standing to bring his claims because he asserted the rights of a third party — Colorado — and alleged only a generalized grievance. Id. at 184–86. The court rejected Mr. Hill's motion to remand because it was dismissing on the "threshold issue" of prudential standing, rather than the jurisdictional issues of constitutional standing or sovereign immunity. Id. at 186–87. It then denied Mr. Hill's motion to certify a question to the Colorado Supreme Court as moot. Id. at 187. On appeal, Mr. Hill argues that the district court erred by finding that he lacked prudential standing to bring his claims. Because we agree and conclude that this error requires a remand, we do not reach Mr. Hill's other contentions.

**Discussion**

We review a district court's dismissal under Fed. R. Civ. Pro. 12(b)(6) de novo. Safe Streets All. v. Hickenlooper, 859 F.3d 865, 878 (10th Cir. 2017). We review dismissals for lack of prudential standing de novo. Wilderness Soc'y v. Kane County, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc). We accept as true all well-pleaded factual allegations in the complaint. Safe Streets All., 859 F.3d at 878. For standing purposes, "we must assume the Plaintiffs' claim has legal validity." Wilderness Soc'y, 632 F.3d at 1168 (quoting Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc)).

This case presents questions about (1) the order in which constitutional standing and other threshold jurisdictional issues should be approached by federal courts, and (2)

5

the content and application of the constitutional and prudential standing doctrines.  We

address each in turn.

## A.    Threshold Issues

Mr. Hill initially argues that the district court erred by analyzing prudential

standing before sovereign immunity and constitutional standing.  According to Mr. Hill,

the Supreme Court has "limited courts' ability to skip jurisdictional issues when, as here,

the case has been removed."  Aplt. Br. at 41.  Mr. Hill concedes that courts "can dismiss

on other preliminary issues before considering subject matter jurisdiction" in some

circumstances.  Id. at 40.  He contends, however, that the district court was required to

find that constitutional standing and other subject matter jurisdiction issues were "more

difficult" to resolve before it used this order.  Id. at 41–42.

We do not believe that the cases establish such a rigid sequence.  The very cases

Mr. Hill cites hold that "there is no unyielding jurisdictional hierarchy."  Gadlin v.

Sybron Int'l Corp., 222 F.3d 797, 799 (2000) (quoting Ruhrgas AG v. Marathon Oil Co.,

526 U.S. 574, 578 (1999)).  The Supreme Court has observed that "[i]t is hardly novel for

a federal court to choose among threshold grounds for denying audience to a case on the

merits."  Ruhrgas AG, 526 U.S. at 585.  As the district court noted, both this court and

the Supreme Court have relied on Ruhrgas to proceed directly to prudential standing

without addressing other jurisdictional issues.  See Wilderness Soc'y, 632 F.3d at 1168

("Because [The Wilderness Society] lacks prudential standing, we proceed directly to that

issue without deciding whether [The Wilderness Society] has constitutional standing or

whether the case is moot."); see also Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005) ("[t]he

6

prudential standing doctrine[] represents the sort of 'threshold question' we have recognized may be resolved before addressing jurisdiction"). Mr. Hill's argument to the contrary relies on the idea that Lexmark International Inc. v. Static Control Components, Inc. limited prudential standing to such a degree that it is no longer appropriate to treat it as a threshold inquiry. 572 U.S. 118, 125–26 (2014); see also infra Part B. A member of this court has already suggested that prior decisions related to the third party standing strand of prudential standing "remain[] sound" after Lexmark because the Supreme Court did not "revisit the doctrine of third party standing" in that case. Kane County v. United States, 928 F.3d 877, 900–01 (10th Cir. 2019) (Tymkovich, C.J., dissenting). We agree and hold that third party standing should continue to be analyzed under the framework of prudential standing. If Mr. Hill is correct that what remains of prudential standing is a loose end, then we will have to wait for the Supreme Court to tie it up. The district court did not err by sequencing the issues in the way it did.

**B.     Prudential Standing Analysis**

Prudential standing represents "judicially self-imposed limits on the exercise of federal jurisdiction" that are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984), Warth v. Seldin, 422 U.S. 490, 498 (1975)). Prudential standing must exist in all cases except where the requirement is "expressly negated," for example by statutory directive from Congress. Id. at 163. Traditionally, the doctrine encompassed three broad principles: "[1] the general prohibition on a litigant's raising another person's legal rights, [2] the rule

7

barring adjudication of generalized grievances more appropriately addressed in the

representative branches, and [3] the requirement that a plaintiff's complaint fall within

the zone of interests protected by the law invoked." Lexmark, 572 U.S. at 126 (quoting

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004)).

In Lexmark, the Supreme Court sought to untangle the traditional strands of

prudential standing analysis and dispel "misleading" labels. Id. at 125. The Court

concluded that the zone of interests test is not prudential in origin and is indeed not a

standing inquiry at all, while the generalized grievance test is properly part of the Article

III constitutional standing inquiry. Id. at 127 n.3. The third party rights inquiry's "proper

place in the standing firmament" was left to "await another day." Id.[3] For the reasons

stated above, we continue to analyze third party standing as an element of prudential

standing and apply our pre-Lexmark decisions bearing on that analysis. See supra Part A.

## 1. Third Party Standing

Under the prudential standing doctrine, a party may not "rest its claims" on the

rights of third parties where it cannot "assert a valid right to relief of its own."

Wilderness Soc'y, 632 F.3d at 1170. Prudential standing "imposes different demands

---

[3] Mr. Hill argues that Lexmark held "that the generalized grievance and zone of interest doctrines in fact fall within the jurisdictional Article III standing inquiry." Aplt. Br. at 22. That is not correct. We have said that "the zone-of-interests doctrine isn't actually a matter of standing at all; instead, it merely asks whether a particular federal cause of action 'encompasses a particular plaintiff's claim.'" In re Peeples, 880 F.3d 1207, 1213 (10th Cir. 2018) (emphasis added) (quoting Lexmark, 572 U.S. at 127). Mr. Hill is correct that the generalized grievance inquiry is now part of constitutional standing. See Kerr v. Polis, 930 F.3d 1190, 1194 n.3 (10th Cir. 2019) (stating that "generalized grievances are 'barred for constitutional reasons, not prudential ones'" quoting Lexmark, 572 U.S. at 127 n.3)).

8

than injury in fact." Id. at 1171. Accordingly, "[a] party may suffer a cognizable injury but still not possess a right to relief." Id. Injury to "a party's interest for the purposes of constitutional standing does not automatically confer prudential standing."

The fact that Mr. Hill alleges violation of a right he contends is his own distinguishes this case from Wilderness Society. In that case, an environmental group could point to no specific right "of its own" that the county violated by seeking to enforce its alleged rights of way over federal lands. Wilderness Soc'y, 632 F.3d at 1170. Instead, it characterized itself as "working to protect its conservation interests" after suffering "aesthetic or recreational injury." Id. at 1171, 1174. We observed that Wilderness Society's asserted injuries might be enough to establish constitutional standing, but that "prudential standing moves beyond injury in fact and addresses whether a plaintiff is asserting its own legal rights rather than resting on the rights or interests of third parties." Id. at 1174.

The Wilderness Society asserted a general interest in conservation and freedom from recreational or aesthetic injury. By contrast, Mr. Hill is asserting that he has a right to fish. See Aplt. App. 33–34 (Mr. Hill alleging, in his complaint, that "he has a right of public access to the subject real property by virtue of the State's title."). The fact that resolving the dispute requires determining whether this segment of the Arkansas River was navigable in 1876 and therefore titled to the state by operation of law does not erase the fact that Mr. Hill is claiming a right in himself.

An example we examined in Wilderness Society is instructive here. In the panel decision, Judge McConnell's dissent posed the following hypothetical:

9

> Imagine that my next-door neighbor, who keeps his property neat and tidy, is faced with a competing claimant to the land, who is likely to allow the property to fill with weeds. I might very much hope my neighbor wins. My property values and aesthetic interests could seriously be affected. I may be impatient with my neighbor's inclination toward compromise and apparent disinclination to go to court. But no one would say I have standing to sue in defense of my neighbor's property rights. The Wilderness Society is in precisely that situation.

Wilderness Soc'y v. Kane County, 581 F.3d 1198, 1232 (10th Cir. 2009) (McConnell, J., dissenting).

Mr. Hill finds himself in a very different situation. He is more like the purported holder of an easement he alleges was granted by the competing claimant than a neighbor who fears aesthetic harm from lack of upkeep. In this hypothetical, determining whether Mr. Hill has any right to use the easement will require an examination of the underlying title. It would make little sense to deny Mr. Hill prudential standing to determine his rights in the easement because of the existence of a dispute between the underlying property owners. The right he asserts is his own, even if it exists by virtue of the actions of another.

Mr. Hill concedes that this purported right comes to him "by virtue of the State's title." Aplt. Br. at 27. However, Mr. Hill's claims do not "turn on the superiority" of a sovereign's property right. Wilderness Soc'y, 632. F.3d at 1171. In Mr. Hill's telling, title vested in the state over a century ago because the river was navigable for title under Article IV and the Equal Footing Doctrine. Mr. Hill alleges that he has a specific, legally protected right to fish resulting from these alleged facts and law. The other parties and amici may ultimately be correct that Colorado law does not actually afford Mr. Hill the

10

right to fish that he asserts, even if he can prove navigability as a factual matter. But in this regard "far-fetchedness is a question to be determined on the merits." Walker, 450 F.3d at 1092. We assume that Mr. Hill's claim has "legal validity" and conclude that he asserts his own rights, not those of Colorado, for prudential standing purposes. Wilderness Soc'y, 632 F.3d at 1168.

### 2.    Generalized Grievance

The district court concluded that Mr. Hill "[did] not show that his claim is more than a generalized grievance based on a desire for the general public, including himself, to be able to fish in certain spots." Order at 8, 18-cv-01710-KMT (D. Colo. Jan. 8, 2019) (ECF No. 47). The parties disagree about whether the district court rested its prudential standing finding on this conclusion. It is unnecessary to resolve this dispute because, in any event, the district court misconstrued the generalized grievance analysis as applying to prudential rather than constitutional standing. See Order at 8, id. (D. Colo. Jan. 8, 2019) (ECF No. 47) ("To satisfy the prudential standing requirement . . . the plaintiff's claim must not be a 'generalized grievance.'"). Lexmark made clear that the generalized grievance analysis is part of constitutional standing, not prudential standing. 572 U.S. at 127 n.3; see also Kerr, 930 F.3d at 1194 n.3. At this stage, we do not examine whether the district court's conclusion that Mr. Hill asserted a generalized grievance was correct.[4]

---

[4] The dissent urges that "we should decide this issue and conclude that Mr. Hill's claim constitutes a generalized grievance." The dissent may be proven right that "the district court will presumably rule again [on remand] that the claim constitutes a generalized grievance," but that is mere speculation at this stage. We respectfully disagree with the dissent's assertion that "we should tell the district court whether

11

The district court's discussion of this issue may be relevant to questions of constitutional standing on remand, but it erred by construing this inquiry as bearing on prudential standing.

The district court erred by concluding that Mr. Hill lacked prudential standing to bring his claims. We take no position on whether Mr. Hill has demonstrated constitutional standing and we do not reach any of the merits issues presented by this case.

We **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

---

such a ruling would be correct." We do not issue advisory opinions. Flast v. Cohen, 392 U.S. 83, 96 (1968).

*Hill v. Warsewa, et al.*, No. 19-1025

**BACHARACH**, J., dissenting.

I agree with the majority that as a member of the public, Mr. Hill has an interest in the homeowners' parcel that does not rest on "the legal rights or interests" of the state of Colorado. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). And I agree that "the district court misconstrued the generalized grievance analysis as applying to prudential rather than constitutional standing." Majority Op. at 11. Given this error, the majority remands to the district court without deciding whether Mr. Hill's claim involves a generalized grievance. I believe that we should decide this issue and conclude that Mr. Hill's claim constitutes a generalized grievance.

I.     **Mr. Hill has asserted a generalized grievance.**

An injury is considered "generalized" when it is "shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499. For example, when a plaintiff asserts only a harm to rights shared with every other citizen, the claim falls outside the constitutional constraints on federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992).

Mr. Hill denies that his harms are generalized, pointing to his allegations of individualized harassment, violence, and threats. According to Mr. Hill, these individualized harms convert "an otherwise public-rights

claim" into a private action. Appellant's Opening Br. at 33. But Mr. Hill is not suing for assault and battery; he is suing to obtain a declaration that he has a protected right to fish in this river on the ground that this is a right enjoyed by every Colorado citizen. In my view, this is a classic example of a generalized grievance.

Mr. Hill also argues that "particularly in the context of a declaratory judgement action, it is enough for standing purposes to say that real harm may occur absent the declaration" because "the Declaratory Judgment Act is supposed to prevent a plaintiff from having to actually incur a harm before bringing suit." Appellant's Opening Br. at 34 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)). Thus, Mr. Hill argues, we should address his claim now without requiring him to prove individualized injury by returning to the fishing hole. But claims for declaratory judgments are subject to constitutional restraints on jurisdiction. *MedImmune*, 549 U.S. at 126. So even if the Declaratory Judgment Act provided a remedy, the district court could not skirt the jurisdictional constraint on generalized grievances.

## II. Because Mr. Hill has asserted a generalized grievance, the district court lacks constitutional jurisdiction.

Mr. Hill's generalized grievance strips the district court of constitutional jurisdiction.

2

Prior cases have described the restriction on generalized grievances as prudential rather than constitutional. *E.g., Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75 (1982). But as the majority observes, the Supreme Court clarified in *Lexmark International, Inc. v. Static Control Components, Inc.* that its "reluctance to entertain generalized grievances" is a constitutional mandate grounded in Article III—not a matter of prudence. 572 U.S. 118, 127 n.3 (2014); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992) ("We have consistently held that a plaintiff raising only a generally available grievance about government . . . does not state an Article III case or controversy.").

Our circuit recently took heed of this clarification, observing that "*Lexmark* made clear that the first two principles previously labelled as prudential standing [the zone of interests test and the bar on generalized grievances] are not independent jurisdictional hurdles." *Kerr v. Polis*, 930 F.3d 1190, 1194 n.3 (10th Cir. 2019). We cited *Lexmark*'s declaration that generalized grievances are "barred for constitutional reasons, not 'prudential' ones." *Id.* (quoting 572 U.S. at 127 n.3). Thus, the majority correctly characterizes the existence of a generalized grievance as a constitutional limitation on the federal courts' jurisdiction, not a prudential limitation.

3

### III. We should decide whether the claim involves a generalized grievance.

The majority correctly concludes that (1) the restriction on generalized grievances is jurisdictional and (2) the district court should not have treated the issue as a prudential concern. But the majority stops there, declining to address whether the district court was right to characterize Mr. Hill's claim as a generalized grievance. I think that we should decide this issue.

We know that the district court will decide whether Mr. Hill's claim constitutes a generalized grievance because that court must ensure its own jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Indeed, the district court has already ruled that Mr. Hill asserted a generalized grievance.

As the majority points out, the district court incorrectly treated the issue as prudential. Though the issue is constitutional, rather than prudential, the content of the test for generalized grievances does not turn on whether the test itself is constitutional or prudential. So the district court will presumably rule again that the claim constitutes a generalized grievance. If the court does so, it will need to remand the case to state court. 28 U.S.C. § 1447(c).

I think that we should tell the district court whether such a ruling would be correct. After all, the district court has already decided whether

the claim constitutes a generalized grievance, and the parties have briefed the issue on appeal.[1] I would tell the district court that it was right to regard the claim as a generalized grievance and that the only error was in dismissing the case rather than remanding it to state court. I would thus reverse and remand to the district court with instructions to remand this case to Colorado state court.

---

[1] The majority acknowledges that the federal courts lack subject-matter jurisdiction to decide generalized grievances, but concludes that "[i]t is unnecessary to resolve" whether Mr. Hill has asserted one. Majority Op. at 11. In my view, however, resolving the issue is both advisable and arguably necessary because we must ensure the existence of subject-matter jurisdiction in district court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). Given the absence of a prudential basis for dismissal, we may incur an obligation to decide whether Mr. Hill's claim involves a generalized grievance. Even in the absence of an obligation, however, we should decide the issue now because the district court's characterization as a generalized grievance is unlikely to change.

5