**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AMERICA WEST BANK MEMBERS,

    Plaintiff - Appellant,

v.

THE STATE OF UTAH; G.
EDWARD LEARY; UTAH
DEPARTMENT OF FINANCIAL
INSTITUTIONS,

    Defendants - Appellees.

------------------------------

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
America West Bank,

    Intervenor - Appellee.

No. 23-4091
(D.C. No. 2:16-CV-00326-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT\***
_____

Before **HARTZ**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.
_____

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Utah Department of Financial Institutions seized America West Bank after concluding the Bank was in financial trouble. The Department then appointed the Federal Deposit Insurance Corporation (FDIC) as the Bank's receiver. Plaintiff-Appellant America West Bank Members (AWBM)—the Bank's sole owner—sued the Department, its commissioner G. Edward Leary, and the State of Utah, contending their actions violated AWBM's state and federal constitutional rights.[1] The district court granted summary judgment for Appellees. AWBM now appeals, but most of its challenges are waived. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**[2]

AWBM's claims implicate the process by which a bank is seized in Utah, so we begin by discussing in some detail the state-law framework for

---

[1] AWBM did not name the FDIC as a defendant. The FDIC intervened in the district court and in this appeal. Only the FDIC filed a response brief in this court, but pursuant to Federal Rule of Appellate Procedure 28(i), Utah, the Department, and Commissioner Leary joined the FDIC's brief urging affirmance. We refer to Utah, the Department, Commissioner Leary, and the FDIC as "Appellees."

[2] We take the facts recited here from those the district court found uncontroverted in its summary judgment orders and the record before the district court at the time of its rulings. AWBM's appellate appendix omits several relevant documents. Because these documents "are accessible from the district court docket," we may "take judicial notice of" them. *Bunn* v. *Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020). We do so where necessary, citing to the district court docket number and using the internal pagination of the

taking possession of a financial institution and appointing a receiver. We then describe the underlying factual and procedural background and turn to AWBM's appellate challenges.

## A

The Bank is chartered in Utah, where the Utah Department of Financial Institutions and its commissioner oversee the Bank's activities. The Department "regularly conduct[s] examinations of banks [in Utah] to determine their safety and soundness." ECF 64 at 2. Utah law provides statutory criteria to gauge the health of a financial institution and allows the commissioner to take "supervisory actions" under certain circumstances. Utah Code Ann. § 7-2-1(1).[3]

One such supervisory action, relevant here, is taking "possession of [the] institution." Utah Code Ann. § 7-2-1(3)(b). To take that step, the commissioner must—either before or within a certain time after taking

---

document. *See In re Syngenta AG MIR 162 Corn Litig. (Hossley-Embry Group II)*, --- F.4th ----, 2024 WL 3684788, at *2 n.2 (10th Cir. 2024) (taking judicial notice of "filings on this district court's docket and on our own docket" where "necessary to inform our discussion").

[3] Utah Code Ann. § 7-2-1(1) lists twelve criteria. For example, if the commissioner finds "the institution is not in a safe and sound condition to transact its business," Utah Code Ann. § 7-2-1(1)(a), or has "failed to maintain a minimum amount of capital," Utah Code Ann. § 7-2-1(a)(f), he may act.

possession—file an action in state court, which then gives "the court supervisory jurisdiction to review the actions of the commissioner." Utah Code Ann. § 7-2-2(1). The state court may "overrule" the commissioner's actions if the court finds they were "arbitrary, capricious, fraudulent, or contrary to law." Utah Code Ann. § 7-2-2(3)(b). As we will explain, Commissioner Leary determined the Bank met criteria in Utah Code Ann. § 7-2-1(1) and filed a verified petition seeking an "Order Approving Possession" of the Bank, which the Utah court granted. R.II at 351–54.

Utah law permits challenges to a possession order. "[W]ithin 10 days after the taking," Utah Code Ann. § 7-2-3(1)(a) allows any "institution or other person . . . aggrieved by the taking" to "apply to the court to enjoin further proceedings." The court is then required to "hear[] the allegations and proofs of the parties" and may "enjoin the commissioner from further proceedings" if the commissioner's taking was "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." Utah Code Ann. § 7-2-3(1)(b). At the conclusion of this process, the court can "order the commissioner to surrender possession of the institution." Utah Code Ann. § 7-2-3(1)(c).

After taking possession, the commissioner may appoint a "receiver or liquidator" to "exercise any or all the rights, powers, and authorities

4

granted to the commissioner" under Utah law. Utah Code Ann. § 7-2-1(4). Here, the FDIC was appointed as the Bank's receiver. The FDIC is a federal agency "created by Congress to promote stability and restore and maintain confidence in the nation's banking system." *Fed. Deposit Ins. Corp.* v. *Bank of Boulder*, 865 F.2d 1134, 1136 (10th Cir. 1988), *on reh'g*, 911 F.2d 1466 (10th Cir. 1990). "To achieve this objective, [the] FDIC insures bank deposits" and pays "depositors when an insured bank fails." *Id.* The Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) also permits the FDIC to act as a receiver for any "depository institution" it insures. *See* 12 U.S.C. § 1821(c)(1) ("[T]he Corporation may accept appointment and act as conservator or receiver for any insured depository institution . . . ."). Once the FDIC is appointed, FIRREA grants it all "rights titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i) (the Succession Clause).

## B

The Bank was formed in May 2000, and, at all relevant times, was wholly owned by AWBM. In 2007, the Department and the FDIC raised concerns

about the Bank's financial health and then conducted an examination.[4] The Department and the FDIC produced a report finding the Bank's condition had "deteriorated significantly" and was "deficient." ECF 64 at 2. The report concluded the Bank was overinvolved in the real estate market, lacked adequate capital, and had inexperienced and underperforming leadership. Discussions about these concerns continued with the Bank for over a year.

The Bank's last examination was in February 2009. The report that followed concluded the Bank was "insolvent," and assigned it the "lowest possible [Risk Management Composite] rating." ECF 64 at 5. The rating indicated the Bank "exhibit[ed] extremely unsafe and unsound practices or conditions . . . and [was] of the greatest supervisory concern." ECF 64 at 5.

In April 2009, the Department informed the Bank that it was considering possession proceedings. Douglas Durbano, Chairman of the Bank's board, asked to "be informed in advance of any" supervisory actions and to have "the opportunity to attend [the hearing] and present evidence." R.II at 270. Mr.

---

[4] Utah Code Ann. § 7-1-314(1) permits the commissioner to "examine or cause to be . . . examined every depository institution" subject to the Department's jurisdiction. The examination must include inquiries into, among other things, "the condition and resources of the institution," "the mode of conducting and managing of its affairs," and the "actions of its directors and officers." *Id.* § 7-1-314(2). Federal law directs the FDIC to conduct similar examinations. *See* 12 U.S.C. § 1817.

Durbano acknowledged, however, "such proceedings can be ex-parte." R.II at 270.[5]

A few weeks later, on May 1, 2009, Commissioner Leary filed an *ex parte* petition under Utah Code Ann. § 7-2-2 seeking an order "approving the taking of possession of" the Bank. R.II at 344. Commissioner Leary alleged the Bank "failed to maintain a minimum amount of capital," the Bank was or was "about to become insolvent," and the Bank's "officers or directors have failed or refused to comply with the terms of a legally authorized order of the Commissioner." R.II at 345–46.

The state court held an *ex parte* hearing the same day. The Department informed the court that Mr. Durbano had asked to attend the hearing, but the court explained he "was not entitled to notice of or presence at the [h]earing." ECF 64 at 10. The court then heard argument on the petition. Commissioner Leary was the only witness. He testified to "each action in the petition,"

---

[5] The parties seem to agree Utah law allowed *ex parte* proceedings under these circumstances. *See* Oral Arg. at 2:28 (AWBM's counsel stating the Utah court "heard the matter, as it was entitled to, *ex parte*"). However, AWBM appears to claim that an *ex parte* proceeding constitutes in inadequate and unconstitutional pre-seizure deprivation process. The district court found this challenge barred by the *Rooker-Feldman* doctrine, and as we will explain, AWBM waived any contrary argument by inadequately briefing the issue on appeal.

concluding the Bank was insolvent and the "loss" from its failure was "estimated in excess of 8 million dollars." ECF 64 at 11.

At the conclusion of the hearing, the state court granted the petition. The court determined the "Bank is not in a safe or sound condition to transact business," "failed to maintain a minimum amount of capital," "is or is about to become insolvent," and "failed or refused to comply with the terms of a legally authorized order issued by the Commissioner." R.II at 351–52. These findings, the court explained, constituted "grounds for taking possession under [the] Utah Code." R.II at 351–53.

Commissioner Leary appointed the FDIC as receiver immediately after taking possession. Later that day, he provided copies of the state court petition and possession order to AWBM. It is undisputed AWBM never invoked the procedures established by Utah Code Ann. § 7-2-3 to challenge the Bank's seizure.

## C

In June 2011, a few years after the FDIC was appointed as receiver, AWBM first challenged the Bank's seizure in Utah state court by suing the State of Utah, the Department, Commissioner Leary, and the Department's

supervisor of banks.[6] *See Am. W. Bank Members, L.C.* v. *State*, 342 P.3d 224, 227 (Utah 2014). In March 2016, AWBM filed an amended complaint in state court, this time naming as defendants only the State of Utah, the Department, and Commissioner Leary. The defendants removed to federal court shortly thereafter. About two years later, AWBM filed the Second Amended Complaint—the operative pleading before us. AWBM asserted seven causes of action, but only two relate to this appeal.

First, AWBM alleged a pre-seizure procedural due process claim under the Utah Constitution. It claimed "seizing the Bank without a basis for finding that any of the twelve statutory preconditions to seizure [under Utah law] existed" and making "false statements and material omissions" during state court proceedings deprived it of procedural due process. R.I at 132 ¶¶ 133–34, 134 ¶ 147. Second, based on the same allegations, AWBM asserted a related civil rights claim under 42 U.S.C. § 1983 against Commissioner Leary, alleging he deprived AWBM of procedural due process under the Fourteenth Amendment by seizing the Bank "without notice and a hearing." R.I at 140.

---

[6] Relevant to the claims before us, AWBM alleged "due process required a pre-seizure hearing." *Am. W. Bank Members, L.C.* v. *State*, 342 P.3d 224, 237 (Utah 2014). The state court dismissed AWBM's claims. *Id.* at 227. The Utah Supreme Court ultimately affirmed dismissal, but ordered AWBM's pre-seizure procedural due process claim dismissed *without* prejudice because the "defect in that claim [was] a failure to plead the claim at an adequate level of detail." *Id.* at 237.

Summary judgment litigation followed. For context, we now discuss some of those proceedings and then detail the litigation history resulting in the order on appeal—the 2022 order granting Appellees' motion for summary judgment.

1

In early 2019, AWBM moved for partial summary on its pre-seizure procedural due process claim and the related § 1983 claim against Commissioner Leary.[7] Both claims were based on the allegedly inadequate process used to seize the Bank. AWBM insisted Commissioner Leary's petition "contained nothing more than conclusory statements that were completely devoid of factual support or evidence" to support taking possession. ECF 45 at 16. That, in "combination with an ex parte hearing in which the Commissioner simply regurgitated the same conclusory statements, resulting in [the state court] rubber stamping the conclusions of the Commissioner," meant AWBM's "due process rights, as well as [its] civil rights, were violated." ECF 45 at 16.

Appellees opposed the motion, maintaining there was no deprivation of procedural due process. Appellees also argued AWBM impermissibly sought "to have this federal court review an order of the state court." ECF 62 at 45–

---

[7] AWBM also moved for partial summary judgment as to its substantive due process claim, which is not at issue in this appeal.

10

46; *see also* ECF 62 at 58 ("Did [J]udge Morris make a mistake signing the order? That's really not a proper question before [the court] . . . . It's inappropriate . . . in federal court [to] second guess a state court's ruling."). Appellees did not reference the *Rooker-Feldman* doctrine, but, as we explain, that is how the district court understood their argument.

The "*Rooker-Feldman* doctrine," the district court explained, "establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." ECF 64 at 18 (quoting *Merrill Lynch Bus. Fin. Servs., Inc.* v. *Nudell*, 363 F.3d 1072, 1074–75 (10th Cir. 2004)). According to the district court, AWBM's procedural due process challenge based on the *ex parte* nature of the state court possession proceedings and the sufficiency of the evidence supporting the seizure were attacks on the state court's possession order and thus barred by the *Rooker-Feldman* doctrine. But to the extent AWBM's procedural due process claim rested on Commissioner Leary's alleged misrepresentations and omissions during the possession hearing, the district court reasoned, those allegations were "independent from the [state court] Order itself" and thus were not barred by *Rooker-Feldman*. ECF 64 at 22. The district court denied summary judgment on that aspect of the claim because, viewing the evidence in favor of the non-movant at that procedural stage, the

11

possession order was based on the 2009 Report concluding the Bank was failing—and not on Commissioner Leary's statements. ECF 64 at 32 & n.14.

Litigation continued in the district court for several years, with both parties engaging in extensive discovery.

## 2

In May 2022, AWBM again moved for summary judgment on its procedural due process claim and related § 1983 cause of action. This time, AWBM appeared to renounce its challenge to the allegedly "flawed examinations process employed by Defendants to seize the Bank." R.II at 199. "Instead," said AWBM, its "motion and memorandum focus exclusively on Defendants' violation of procedural due process and deprivation of civil rights for failing to provide notice and a meaningful opportunity to be heard either before *or after* the seizure of the Bank, as is clearly required by the due process clauses of the United States and Utah Constitutions." R.II at 199–200 (emphasis added). AWBM contended, for the first time, the immediate appointment of the FDIC "terminated any meaningful opportunity for *post-seizure* relief." R.II at 200 (emphasis added).

In their opposition, Appellees insisted AWBM "completely abandoned the premise of its original" summary judgment motion. ECF 284 at 18. AWBM's second motion for summary judgment, Appellees explained, was

"devoid of evidence or argument of any fraud upon the state court." ECF 284 at 18. Instead, "AWBM present[ed] a new legal argument," ECF 284 at 22, that the *post-seizure* appointment of the FDIC foreclosed its ability to "challenge the Utah court's decision ordering possession of the Bank to [the Department] and [the] FDIC." ECF 284 at 24 (quoting ECF 258 at 13–14 (AWBM's second partial motion for summary judgment)). We will refer to this challenge as AWBM's Post-Seizure Claim.

Appellees moved for summary judgment a few weeks later. Relevant here, they contended AWBM lacked "standing" because its claims belonged to the FDIC under FIRREA's Succession Clause. R.III at 501–02.

The district court scheduled oral argument limited to the standing issue. At the hearing, AWBM focused only on its standing to pursue the *Post-Seizure Claim. See, e.g.*, R.III at 646 ("[T]his complaint is about the harm they caused at the moment of seizure."). "[O]nce the FDIC [was] appointed receiver," AWBM argued, the "state court ha[d] no jurisdiction" to review the Utah court's possession order, depriving AWBM of a post-seizure opportunity to be heard. R.III at 649. AWBM insisted this claim was not covered by the Succession Clause.

In a colloquy with AWBM's counsel, the district court asked "[w]here do you plead this [Post-Seizure Claim] in your complaint?" R.III at 650. AWBM

identified several paragraphs discussing Appellees' actions before, and during, the state court proceedings.[8] But the district court saw no allegation that AWBM was "precluded from objecting" to the seizure under Utah Code Ann. § 7-2-3(1)(a). R.III at 656. In response, AWBM maintained its claim "is inherent in the complaint if it's not directly stated in there." R.III at 657. The district court raised the same issue with Appellees, stating "[w]hat I'm struggling with . . . is the [post-seizure] theory that counsel have argued doesn't seem to be the theory that's argued in the complaint." R.III at 663. Appellees' response was unequivocal: "[i]t is not [in the complaint]," and "it is also not the basis on which [AWBM has] been litigating this case for the past several years." R.III at 663.

---

[8] AWBM specifically relied on paragraphs "133, 134 through 136, 178, 192, 234, 251, et cetera"—to establish the Post-Seizure Claim. R.III at 656. But paragraphs 133 through 136 allege a *pre-seizure* deprivation. R.I at 132 ¶ 133 ("Commissioner Leary and UDFI violated this clearly established law by seizing the Bank without a basis for finding that any of the twelve statutory preconditions to seizure existed."); R.I at 132 ¶ 134 ("[T]he false statements and material omissions made by Commissioner Leary and UDFI to the court would constitute a violation of procedural due process."); R.I at 140 ¶ 192 ("Commissioner Leary acted intentionally and deliberately in depriving AWBM of its property without notice or a hearing."). Paragraphs 178, 234, and 251 do not relate to the procedural due process or § 1983 claims.

14

The district court granted Appellees' motion for summary judgment and dismissed the case with prejudice.[9] The district court made three rulings relevant to the issues on appeal.

*First*, the district court reiterated its prior conclusion that the *Rooker-Feldman* doctrine barred AWBM's challenge based on the *ex parte* nature of the state court possession proceedings and the sufficiency of the evidence supporting the possession order.[10] But the district court determined *Rooker-Feldman* did not bar AWBM's procedural due process and related civil rights claims insofar as they challenged "Commissioner Leary's purported failure to disclose material information to the state court judge" during the possession hearing. R.III at 696.

*Second*, the district court declined to consider AWBM's Post-Seizure Claim, reasoning it was not found "anywhere in AWBM's second amended complaint." R.III at 695 n.5.

---

[9] The district court denied as moot AWBM's cross-motion for summary judgment.

[10] We understand AWBM, in its second motion for summary judgment, abandoned its procedural due process challenge based on the evidentiary foundation for the possession order. R.II at 199–200 ("This motion and memorandum are without regard to Defendants' motives and/or the assertedly flawed examinations process employed by Defendants to seize the Bank."). This claim is therefore not relevant to the issues before us on appeal.

*Third*, the district court ruled AWBM lacked prudential standing to advance any remaining pre-seizure deprivation claim. "While the State couches its argument in terms of standing," the district court explained, "the argument concerns what is sometimes referred to as 'prudential standing,' which 'encompasses various limitations, including the general prohibition on a litigant's raising another person's legal rights.'" R.III at 691 n.3 (quoting *Brumfiel* v. *U.S. Bank*, 618 F. App'x 933, 936 (10th Cir. 2015)). The district court concluded AWBM's claims based on Commissioner Leary's misrepresentations—which survived the *Rooker-Feldman* dismissal—"f[ell] within the scope of FIRREA's succession clause and thus were assumed by the FDIC upon its appointment as receiver." R.III at 696.

This timely appeal followed.

## II

AWBM urges reversal on three grounds. First, AWBM attempts to argue against the district court's application of the *Rooker-Feldman* doctrine. Second, AWBM insists the district court erroneously refused to consider the Post-Seizure Claim. Third, AWBM maintains it has prudential standing to advance its Post-Seizure Claim, insisting the district court's contrary ruling is based on an erroneous application of FIRREA's Succession Cause. None of these arguments is availing, as we explain.

16

**A**

We begin with AWBM's arguments about the dismissal of its claims based on the *Rooker-Feldman* doctrine. Appellees contend AWBM waived the issue by failing to brief it adequately on appeal. We agree.

"The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012). "[T]he type of judicial action barred by *Rooker-Feldman* [] consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law." *Bolden* v. *City of Topeka, Kansas,* 441 F.3d 1129, 1143 (10th Cir. 2006). "We review the application of the *Rooker-Feldman* doctrine de novo." *In re Miller*, 666 F.3d at 1260.

Recall, the district court found the *Rooker-Feldman* doctrine barred AWBM's procedural due process challenges to the *ex parte* nature of the possession proceedings and the allegedly inadequate factual foundation for the possession order. These claims, the district court reasoned, "complain[] of injuries caused by the state proceedings granting" Commissioner Leary's petition, and the *Rooker-Feldman* doctrine thus applied. ECF 64 at 20. The "*only* claim [the court] has jurisdiction to hear," the district court explained,

17

"is the claim that AWBM's rights were violated as a result of Commissioner Leary's purported failure to disclose material information to the state court judge that would have prevented entry of the order of possession." R.III at 696 (emphasis added). The district court explained these claims were "not barred under *Rooker-Feldman*" because they challenge "the actions of the Defendants—not Judge Morris' Order." ECF 64 at 22; *see also* R.III at 696.

On appeal, AWBM's challenge to the district court's *Rooker-Feldman* ruling appears only in a footnote in its opening brief. AWBM's argument states, in full,

> AWBM wishes to further clarify that despite the district court having surmised that AWBM is seeking to have a federal court review of the state court decision leading to the Order of Possession, such is not the case. AWBM emphatically asserts that the *Rooker-Feldman* doctrine as discussed in the district court Memorandum Decision and Order is not applicable in this case. AWBM's action is not seeking to challenge the state court's decision to issue an order authorizing [the Department] to take possession of Bank. Instead, AWBM's action is for violation of its procedural due process rights and is based upon the fundamental and unchallenged premise that procedural due process requires notice and an opportunity to be heard in either a pre- or post-seizure hearing when the government seizes property.

Opening Br. at 29 n.8. Our law is clear: "Arguments raised in a perfunctory manner, *such as in a footnote,* are waived." *United States* v. *Berry,* 717 F.3d 823, 834 n.7 (10th Cir. 2013) (emphasis added) (quoting *United States* v. *Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (*en banc*)). And this argument

18

appears in a section of the opening brief dedicated to a different issue.[11] We have no trouble concluding, on the record before us, AWBM did not adequately present on appeal the issue it contends warrants reversal.

In its reply brief, AWBM invites us to overlook the waiver. AWBM is correct that, mostly, "whether issues should be deemed waived is a matter of discretion." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1182 (10th Cir. 2023) (quoting *United States* v. *Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019)). Here, AWBM contends "the interests of justice" support excusing its waiver because it "did not intentionally abandon its issues" and "the issues are fully briefed." Reply Br. at 26. We are not persuaded.

According to AWBM, it "argued against the *Rooker-Feldman* doctrine [in its opening brief] regardless of the labels or nomenclature used" by contending it did "not seek recission of the Order of Possession." Reply Br. at 24–25. But this is not sufficient. AWBM does not explain the district court's ruling, why it

---

[11] AWBM did not include the district court's *Rooker-Feldman* order and most of the relevant district court briefing on the issue in its appellate appendix. "A party who seeks to reverse the decision of a district court must provide an adequate record for this court to determine that error was committed." *Travelers Indem. Co.* v. *Accurate Autobody, Inc.*, 340 F.3d 1118, 1119 (10th Cir. 2003). And our local rules require an appellant to include "the order from which the appeal is taken," 10th Cir. R. 10.4(C)(6), "pertinent . . . opinions [and] orders of [the] district judge," 10th Cir. R. 10.4(C)(4), and "the motion," "relevant portions" of "supporting documents," and the parties' briefing, 10th Cir. R. 10.4(D)(2).

was wrong, the claims affected, or even the standard governing our review. "[T]his court is not in the business of filling in the gaps" made by "insufficient arguments." *United States* v. *McBride*, 94 F.4th 1036, 1045 (10th Cir. 2024); *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th at 1203 ("Where litigants do not advance a meaningful theory of error, we 'will not go hunting' for it." (quoting *Voulgaris* v. *Array Biopharma, Inc.*, 60 F.4th 1259, 1265 (10th Cir. 2023))); *Rodriguez* v. *IBP, Inc.*, 243 F.3d 1221, 1227 (10th Cir. 2001) ("This court will not make arguments for [appellant] that he did not make himself.").

Next, AWBM maintains we should review the *Rooker-Feldman* challenge because it was discussed in the reply brief. An appellant typically cannot raise an argument "in cursory fashion in his Opening Brief and then develop[] [it] in his Reply Brief." *United States* v. *Martinez*, 92 F.4th 1213, 1233 n.4 (10th Cir. 2024). And we are disinclined to address appellate arguments untested by the adversarial process. *Hill* v. *Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) (explaining our waiver rules do not "compel us to undertake . . . self-directed research or pursue late and undeveloped arguments, and we exercise caution in doing so, especially in complex cases where (as here) highly competent counsel have represented the parties throughout all stages of the proceedings"); *see id.* (explaining "without the benefit of a response from appellee to an appellant's late-blooming argument, [we] would run the risk of

an improvident or ill-advised opinion, given our dependence . . . on the adversarial process for sharpening the issues for decision" (quoting *Headrick* v. *Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994))).

Accordingly, we must conclude AWBM has waived any appellate challenge to the district court's *Rooker-Feldman* ruling by failing to brief it adequately on appeal.

## B

AWBM next challenges the grant of summary judgment to Appellees on its remaining procedural due process and related civil rights claims. We generally review a decision granting summary judgment "de novo, applying the same standard as the district court." *E.W.* v. *Health Net Life Ins. Co.*, 86 F.4th 1265, 1294 (10th Cir. 2023). Here, AWBM's allegation of error is that the district court refused to consider its Post-Seizure Claim.[12] When discussing the Post-Seizure Claim, the district court explained it would "not address the merits of AWBM's new argument where it was never properly pleaded or briefed in response to the State's motion." R.III at 696 n.5. In support of reversal, AWBM makes two arguments. First, AWBM insists it pled the Post-Seizure Claim in the operative complaint, and second, to the

[12] Recall, the Post-Seizure Claim alleges the immediate appointment of the FDIC deprived AWBM of a post-deprivation opportunity to be heard.

extent its allegations were unclear, its summary judgment briefing "sufficed to preserve the issue and tee it up for decision by the district court." Opening Br. at 30. We discern no error.

1

AWBM first insists it pled a Post-Seizure Claim, and the district court erroneously concluded otherwise. We disagree.

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Generally, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious* v. *Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007). "After all, these are, very basically put, the elements that enable the legal system to get weaving—permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits." *Id.*

22

Guided by these principles, we agree with the district court that AWBM failed to allege the Post-Seizure Claim. AWBM claimed Appellees violated its procedural due process rights by "seizing the Bank without a basis for finding that any of the twelve statutory preconditions to seizure existed," in violation of "clearly established law" requiring a pre-seizure hearing. R.I at 132–133. The focus of the complaint was on a *pre*-seizure deprivation of procedural due process. R.I at 131 ¶ 126 ("[O]ne of the fundamental . . . premises of allowing seizure without a prior hearing is that the seizing official strictly adheres to the statutory requirements."); R.I at 134 ¶ 145 ("No reasonable Commissioner would believe that he or she could, without notice and a hearing and without strictly complying with statutory requirements, brazenly seize a financial institution."). The complaint nowhere alleged the immediate appointment of the FDIC deprived AWBM of a *post*-seizure opportunity to be heard.

We thus agree with the district court that AWBM's Post-Seizure Claim was never alleged.

**2**

AWBM next insists, even if its complaint is deficient, the district court should have considered statements in its summary judgment briefing to "clarify allegations in [the] complaint whose meaning is unclear." Opening Br. at 30 (quoting *Pegram* v. *Herdrich*, 530 U.S. 211, 230 n.10 (2000)). In

23

support, AWBM relies on *Pegram* v. *Herdrich*, where the Supreme Court noted, in a case involving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "we may use [plaintiff's] brief to clarify allegations in her complaint whose meaning is unclear." 530 U.S. at 230 n.10. This general rule does not apply here, where the allegations are not unclear but absent.

Rather, "[a]n issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint, pursuant to Federal Rule of Civil Procedure 15." *Pater* v. *City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011). We "construe the district court's refusal to address [a] new issue as a denial of plaintiffs' request" to amend the complaint. *Id.* In this posture, we generally "will not reverse the court's decision [not to consider a new issue advanced at summary judgment] absent an abuse of discretion." *Id.* (quoting *Minter* v. *Prime Equip. Co.*, 451 F.3d 1196, 1204–05 (10th Cir. 2006). The parties do not cite this authority—neither did the district court—but in the interest of fully adjudicating AWBM's appellate challenges, we discuss these more relevant legal principles here.

Rule 15, governing the amendment of pleadings, provides district courts should grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "As a general rule, a plaintiff should not be prevented from pursuing a claim merely because the claim did not appear in the initial complaint." *Pater*, 646

24

F.3d at 1299. However, a court properly denies leave to amend when "a late shift in the thrust of the case will [ ] prejudice the other party in maintaining his defense upon the merits." *Id.* (alteration in original) (quoting *Evans* v. *McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991)). Indeed, "untimeliness alone is a sufficient reason to deny leave to amend . . . when the party filing the motion has no adequate explanation for the delay." *Frank* v. *U.S. W., Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993). And when "the party seeking amendment kn[ew] or should have known of the facts upon which the proposed amendment is based but fail[ed] to include them in the original complaint," a court appropriately denies leave to amend. *Las Vegas Ice & Cold Storage Co.* v. *Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *State Distrib., Inc.* v. *Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)). A district court may also "withhold leave to amend if the amendment would be futile." *Chilcoat* v. *San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022). Amendment is futile if "the complaint, as amended, would [still] be subject to dismissal." *Full Life Hospice, LLC* v. *Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *Bradley* v. *Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). We review futility determinations *de novo*. *Cohen* v. *Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010).

Applying these standards, we discern no reversible error in the district court's refusal to consider the Post-Seizure Claim.

*First*, AWBM's Post-Seizure Claim, at least on the arguments before us, is likely unavailing as a matter of law. It is undisputed Utah law provided a post-seizure process to seek the Bank's return. Utah Code Ann. § 7-2-3 (explaining a person "aggrieved by the taking" may challenge it, and, if successful, the court must "order the commissioner to surrender possession of the institution"). Indeed, AWBM affirmatively alleged "a post-seizure injunction is available to one whose financial institution has been seized." R.I at 137 ¶ 168. There is no question AWBM never *tried* to use this process. AWBM simply decided, "[i]mmediately after the seizure of the Bank," that to "petition the court to undo the seizure would not provide any meaningful relief." R.I at 138 ¶ 173; *see also* R.I at 137 ¶ 168 (alleging the return of the Bank "would not restore the public's confidence in the Bank which had been wrongfully destroyed by Commissioner Leary's actions"). "Having ignored the available procedures," AWBM is in "no position to argue that they are unconstitutional." *Weinrauch* v. *Park City*, 751 F.2d 357, 360 (10th Cir. 1984). We are likewise unpersuaded by AWBM's argument that federal law—12 U.S.C. § 1821(j)—deprived the Utah courts of jurisdiction to overrule the order

of possession as soon as Commissioner Leary appointed the FDIC as receiver.[13]

We are aware of no court applying § 1821(j) in the manner AWBM suggests, and AWBM cites no authority to support its position.[14]

*Second*, AWBM raised the Post-Seizure Claim eleven years after first challenging the Bank's seizure in state court, four years after the operative complaint was filed, and two years after the district court ruled on AWBM's partial summary judgment motion. We have affirmed the denial of leave to amend even when the request was made much earlier. *Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185 (denying a motion to amend filed "approximately

---

[13] That statute provides, "[e]xcept as provided in this section, no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. § 1821(j).

[14] As Appellees point out, at least one of our sister circuits has rejected AWBM's interpretation. Resp Br. at 52–54; *Hindes* v. *F.D.I.C.*, 137 F.3d 148, 168 (3d Cir. 1998) (finding § 1821(j) barred *a federal court* from removing the FDIC as receiver because "there is an adequate procedure available" under *Pennsylvania law* "to challenge the appointment"). Moreover, AWBM appears to suggest appointing the FDIC as receiver somehow "dispossess[ed] the UDFI of the Bank and its assets and preempt[ed the] application of Utah Code § 7-2-3." Opening Br. at 3; *see also* Oral Arg. at 3:00–3:06 (suggesting the Department foreclosed post-seizure relief by "transferring" the Bank to the FDIC). AWBM cites no authority supporting this assertion, and Utah law appears to refute it directly. *See* Utah Code Ann. § 7-2-1(4) ("Upon taking possession of an institution . . . the *commissioner* is vested by operation of law with the title to and the right to possession of all assets . . . . While in possession of an institution . . . the commissioner or any receiver . . . may exercise any or all of the rights, powers, and authorities granted to the *commissioner* . . . ." (emphasis added)).

27

a year and a half after the complaint was filed, 9 months after partial summary judgment was entered and only a few months before the case was scheduled for trial"). Finally, AWBM has never suggested the Post-Seizure Claim relies on previously unavailable information. Instead, it appears the theory of the case shifted from a pre-seizure deprivation to a post-seizure deprivation. *Pater*, 646 F.3d at 1299 (explaining a plaintiff cannot simply wait until "the last minute to ascertain and refine the theories on which they intend to build their case" (quoting *Evans*, 936 F.2d at 1091)).

The district court thus did not err by declining to consider AWBM's Post-Seizure Claim, advanced for the first time at summary judgment.

## C

Finally, AWBM challenges the district court's grant of summary judgment based on FIRREA's Succession Clause. As we will explain, waiver forecloses this appellate challenge.

Appellees moved for summary judgment arguing, under the Succession Clause, the FDIC inherited the right to bring AWBM's claims.[15] Because

---

[15] When the FDIC is appointed as a receiver, FIRREA's Succession Clause grants it "all rights, titles, powers, and privileges of the [Bank], and of any stockholder . . . of such [Bank] with respect to the [Bank] and the assets of the [Bank]." 12 U.S.C. § 1821(d)(2)(A)(i). Because we find AWBM waived any challenge to the district court's Succession Clause analysis, we do not discuss this statute, or its proper interpretation, further.

AWBM attempted to assert a claim belonging to the FDIC, Appellees contended AWBM lacked "standing." R.III at 691.

The district court held AWBM's claims based on Commissioner Leary's alleged misrepresentations during the state court possession proceedings were covered by FIRREA's Succession Clause. Those claims, in the district court's view, sought to assert rights of AWBM as the Bank's "stockholder" with respect to the Bank and the Bank's assets—and thus succeeded to the FDIC. R.III at 696. The district court thus concluded AWBM lacked prudential standing. "Under the prudential standing doctrine, a party may not 'rest its claims' on the rights of third parties where it cannot 'assert a valid right to relief of its own.'" *Hill* v. *Warsewa*, 947 F.3d 1305, 1309–10 (10th Cir. 2020) (quoting *Wilderness Soc'y* v. *Kane County*, 632 F.3d 1162, 1170 (10th Cir. 2011) (*en banc*)).

On appeal, AWBM insists it has prudential standing to bring the *Post-Seizure Claim*. Opening Br. at 16 ("[T]he right of AWBM to seek redress for the violation of a constitutional right, and specifically here, the right to a *post-seizure hearing* after the seizure of its property, must be regarded as beyond the scope of § 1821(d)(2)(A)." (emphasis added)). But AWBM's appellate challenge is based on a fundamental misunderstanding of the district court's ruling.

29

According to AWBM, the district court held it "lacked 'prudential standing' to assert *any* of its claims"—which AWBM takes to include the Post-Seizure Claim. Opening Br. at 4 (emphasis added). But recall, the district court determined AWBM did not even *allege* a Post-Seizure Claim. R.III at 696 n.5 (district court stating it "will not address the merits of [the Post-Seizure Claim] where it was never properly pleaded or briefed in response to the State's motion [for summary judgment]"). When it comes to prudential standing, the district court considered only whether AWBM's claims challenging Commissioner Leary's alleged misrepresentations succeeded to the FDIC. And as Appellees persuasively argue, "nowhere in its opening brief does AWBM mention *that* claim." Resp. Br. at 46.

By failing to address the only prudential standing ruling the district court made—that the claim concerning Commissioner Leary's alleged misrepresentations succeeded to the FDIC—AWBM has waived any appellate challenge to it. *EEOC* v. *C.R. Eng., Inc.*, 644 F.3d 1028, 1050 n.18 (10th Cir. 2011) ("Because [appellant] has failed to present any argument or authority in support of this particular . . . claim, we decline to further consider it on appeal.").

**III**

We AFFIRM the district court's grant of summary judgment.

Entered for the Court

Veronica S. Rossman
Circuit Judge